# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2290

_____

United States of America,        *

                            *

          Appellant,        *

                            *     Appeal from the United States

    v.                      *     District Court for the

                            *     District of Nebraska.

Lindsey Jimenez,           *

                            *

          Appellee.         *

_____

Submitted: December 10, 2001
Filed: February 27, 2002

_____

Before WOLLMAN,[1] Chief Judge, HANSEN, Circuit Judge, and FENNER, District Judge.[2]

_____

HANSEN, Circuit Judge.

The government appeals the district court's decision to depart downward when sentencing Lindsey Jimenez for committing perjury before a federal grand jury. The

_____

[1]The Honorable Roger L. Wollman stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on January 31, 2002. He has been succeeded by the Honorable David R. Hansen.

[2]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri, sitting by designation.

government argues that the grounds relied upon by the district court were insufficient to support the departure. We agree and reverse and remand for resentencing.

## I.

Ms. Jimenez's perjury conviction arises out of the grand jury's investigation into the robbery of the First National Bank in Omaha, Nebraska. Two masked gunmen robbed the First National Bank in February 2000. A witness followed the bank robbers as they fled the bank in a stolen Chevrolet Blazer. A few blocks later, the witness observed the robbers abandon the Blazer and get into a white Monte Carlo that departed the area at a high rate of speed. The robbers went unapprehended.

Law enforcement officers began to suspect that Justin and James Allee committed the Omaha bank robbery after the brothers were arrested for a similar bank robbery in Lincoln, Nebraska. In March 2000, the Allees robbed a Lincoln bank using weapons similar to those used in the Omaha robbery. The Allees fled the bank in a vehicle, but law enforcement officers initiated a chase when the brothers attempted to switch vehicles after the robbery. The Allees evaded capture and later broke into a rural home and carjacked a vehicle. The Allees shot the occupants of the home during the encounter, leaving them grievously wounded. Law enforcement officers captured the Allees a few days later.

Following the Allees' arrests, the grand jury initiated an investigation into the brothers' possible involvement in a string of robberies committed earlier in the year, including the Omaha bank robbery. The grand jury was particularly interested in whether either of the Allees had access to a white Monte Carlo during the time period of the Omaha robbery and, if so, what happened to the vehicle. The grand jury subpoenaed Ms. Jimenez, a longtime friend of the Allees' sister, who recently had become romantically involved with James Allee, and questioned her about the

2

robberies and her knowledge of the white Monte Carlo. Ms. Jimenez denied that she had been asked by either of the Allees to conceal any vehicle or alter the appearance of any vehicle. She further denied knowing that Justin Allee had a white Monte Carlo.

Unbeknownst to Ms. Jimenez, law enforcement officers previously had monitored telephone conversations between her and the jailed Allees. In one of those conversations, Justin Allee told Ms. Jimenez to paint and sell "that Monte." (Presentence Investigation Report (PSR) at 6.) She indicated in response that the request had already been "taken care of." (Id.) During a monitored call with James Allee, she also discussed whether "Justin's Monte Carlo" had been painted. (Id. at 7.) Ms. Jimenez was confronted with the recorded references to the Monte Carlo during her grand jury testimony but nevertheless maintained that she knew nothing about the vehicle.

In June 2000, the government filed a one-count indictment charging her with committing perjury before the grand jury, a violation of 18 U.S.C. § 1623(a) (1994). She pleaded guilty to the charge, and the PSR recommended that she be sentenced as an accessory after the fact because she committed perjury "'in respect to a criminal offense.'" (PSR at 8, quoting U.S. Sentencing Guidelines Manual § 2J1.3(c)(1) (Nov. 2000)). Guideline § 2X3.1, the accessory guideline, instructs that a defendant convicted as an accessory be sentenced six levels below "the base offense level [for the underlying offense, in this case the Omaha bank robbery,] plus any applicable specific offense characteristics [applicable to the bank robbery] that were known, or reasonably should have been known, by the defendant." USSG § 2X3.1(a) & comment. (n.1). The PSR concluded that the relevant underlying offense was the Omaha bank robbery, which under guideline § 2B3.1(a) has a base offense level of 20. The PSR recommended a two-level increase because property was taken from a financial institution, id. § 2B3.1(b)(1), and a five-level increase because a weapon was brandished or possessed by the robbers, id. § 2B3.1(b)(2), amounting to an

offense level of 27 for the underlying bank robbery. Subtracting three levels for Ms. Jimenez's acceptance of responsibility, and accounting for the six-level decrease required by § 2X3.1, the PSR determined a total offense level of 18, placing Ms. Jimenez in a sentencing range of 27 to 33 months in light of her criminal history category I.

The district court adopted the PSR and its recommended sentencing range, over Ms. Jimenez's objections, but granted her motion for a downward departure. The district court concluded that a three-level downward departure to level 15 was warranted based on (1) Ms. Jimenez's minimal participation in the crime; (2) the lack of evidence that a weapon was used in the commission of "the offense"; and (3) Ms. Jimenez's perjury was aberrant behavior. (Judgment, R. at 21.) The district court sentenced Ms. Jimenez to 18 months imprisonment, the bottom end of the level 15 range.

II.

A district court may impose a sentence outside of the applicable Guidelines range when "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b); see also USSG § 5K2.0. In other words, a district court must determine whether the defendant's circumstances are sufficiently distinguished from the "heartland" of typical cases to which the Commission intended the Guidelines to apply. See Koon v. United States, 518 U.S. 81, 94 (1996). We review a district court's decision to depart downward for an abuse of discretion. See United States v. Hasan, 245 F.3d 682, 684 (8th Cir. 2001), cert. denied, 122 S. Ct. 238 (2001).

4

We recognize the substantial deference afforded the district court's departure decision, see Koon, 518 U.S. at 98, but determine that the grounds relied upon by the district court do not warrant a departure here. The district court erred in relying on Ms. Jimenez's purported minimal participation to justify the departure. A defendant's mitigating role in an offense is already taken into account by the Guidelines, see USSG § 3B1.2, and the court had made no downward adjustment for role in the offense in the determination of her adjusted offense level. We find it nearly impossible that a situation would ever arise where a defendant's offense level would be so exceptionally overstated so as to warrant a departure beyond the credit already contemplated by § 3B1.2's mitigating role adjustments. See United States v. Sheridan, 270 F.3d 669, 671 (8th Cir. 2001) ("If the guideline has already taken into account the encouraged factor . . . the court should depart 'only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present.'" (quoting Koon, 518 U.S. at 96)).

More importantly, we do not believe a defendant who commits perjury directly (as opposed to suborning it) can ever be a minor or minimal participant in the crime of perjury. There must be multiple actors involved in concerted criminal activity before a district court can consider a defendant's role in the offense. Perjury is a crime that arises solely from a defendant's individual conduct, thereby foreclosing any culpability comparisons. We presume the district court meant that Ms. Jimenez was only minimally involved in the underlying Omaha bank robbery offense. Indeed, there is no proof that she was involved at all in the commission of that crime. This fact, however, is insufficient to make her case atypical. When a defendant perjures herself in relation to an underlying criminal offense, even if the perjured testimony is given only to conceal the crimes of others, the Guidelines contemplate that the defendant is to be sentenced based on the gravity of the underlying crime about which she is testifying, less six levels. A defendant, however, must have had actual or constructive knowledge of the underlying crime's specific offense characteristics at the time she testifies before those characteristics may be relied upon to enhance her

5

sentence. Thus, the defendant's cognizance of the circumstances of the underlying crime, not her actual involvement in it, is the fundamental sentencing focus. In considering the extent, if any, of Ms. Jimenez's actual involvement in the bank robbery being investigated, the district court contravened the Guidelines sentencing scheme for perjury offenses and erred in departing from the required sentence.

The district court's reliance on the lack of evidence concerning the use of a weapon as a ground for a downward departure is somewhat befuddling.[3] First, it was undisputed at Ms. Jimenez's sentencing that weapons were used by the perpetrators of the Omaha bank robbery. Second, the district court adopted the PSR which recommended a five-level increase because Ms. Jimenez either knew, or reasonably should have known, at the time she testified that weapons had been used during the bank robbery. That finding was supported both by facts contained in the PSR and by the evidence presented at the sentencing hearing. For instance, the government established that Ms. Jimenez was informed prior to giving her grand jury testimony that the Omaha robbery involved the use of weapons and that, in one of the intercepted phone calls, Ms. Jimenez discussed weapons hidden by the Allees. As a consequence, the district court's departure reason that there was a lack of evidence that weapons were used was contrary to the undisputed facts before the court and contravened its previous decision to impose the five-level upward adjustment.

The final departure ground relied upon by the district court was Ms. Jimenez's allegedly aberrant behavior. Prior to the November 2000 amendments to the Guidelines, our court had recognized that a defendant's aberrant behavior may be grounds for departure even though that factor was unmentioned in the Guidelines. See, e.g., United States v. Kalb, 105 F.3d 426, 429 (8th Cir. 1997). The November

---

[3]We presume that the district court, in referring to the use of a weapon in "the offense," see supra at 4, was commenting on the evidence concerning the weapons used in the underlying offense of bank robbery, not on the fact that Ms. Jimenez did not use a weapon while committing her perjury in front of the grand jury.

2000 amendments, however, included a policy statement recognizing that this factor is a favored ground for departure only in an "extraordinary case." See USSG § 5K2.20. The Guidelines define aberrant behavior as "a single criminal occurrence or single criminal transaction that (A) was committed without significant planning; (B) was of limited duration; and (C) represents a marked deviation by the defendant from an otherwise law-abiding life." Id., comment. (n.1).

Although Ms. Jimenez has only one criminal history point, the PSR reflects that she was arrested for providing false information to authorities shortly before her grand jury appearance and, several weeks after her appearance, was arrested for attempted possession of a controlled substance. She was convicted of both violations. Based on these other unlawful acts, we disagree that Ms. Jimenez's perjury can be characterized as a marked deviation from an otherwise law-abiding existence. Moreover, even if her conduct was aberrant, we find nothing which makes her situation an extraordinary one. See USSG § 5K2.20, comment. (n.2) (identifying factors a court may consider in determining whether to depart based upon aberrant behavior). There was no evidence that Ms. Jimenez suffered from an adverse mental or physical condition, or any evidence of her past philanthropy or other socially-worthy behavior. As for her motivation, the only inference that can be drawn from the evidence is that she lied to the grand jury to protect the Allees, and once she was caught in the lie, she was willing to face incarceration rather than provide truthful testimony or later inform investigators about what she knew about the Monte Carlo.

At the sentencing hearing, the district court expressed its belief that Ms. Jimenez was under some pressure from friends and family not to be a "snitch" and that the offense level in Ms. Jimenez's case "add[ed] up" too quickly. (Sent. Tr. at 44.) Most witnesses called to testify before the grand jury about friends or family likely are apprehensive about providing incriminating evidence against those they care about. We therefore find nothing unusual about the pressures that may have led to Ms. Jimenez's perjured testimony. As to the severity of the sentence, a district

7

court's aversion or distaste for the applicable range required by the Guidelines is not an adequate ground to depart.  See United States v. Ross, 210 F.3d 916, 927 (8th Cir. 2000); USSG § 5K2.0, comment.

## III.

For these reasons, we conclude that Ms. Jimenez's conduct involved a garden-variety instance of perjury and hold that the district court abused its discretion in departing below the applicable Guidelines sentencing range.  Accordingly, we reverse the judgment of the district court and remand with instructions to resentence Ms. Jimenez to a term of imprisonment within the correctly determined sentencing range of 27 to 33 months.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.