TACHA, Chief Circuit Judge.
A jury convicted Defendant-Appellant Johnny Lang and Defendant-Appellant Shari Lewis Lang of the following: (1) obstructing justice under 18 U.S.C. § 1504, (2) acting as accessories after the fact to the distribution of heroin in violation of 18 U.S.C. § 3, and (3) conspiring to do both in violation of 18 U.S.C. § 371. The jury also convicted Mr. Lang of making a false statement to the FBI in violation of 18 U.S.C. § 1001 and found Mrs. Lang guilty of unlawfully removing a document from a federal clerk’s office in violation of 18 U.S.C. § 2071(a).
After departing downward to offense levels of 21, the district court sentenced each of the Langs to a forty-six-month prison term. Both filed timely notices of appeal, and the government filed timely cross-appeals challenging the downward departures. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742, REVERSE the downward departures, and AFFIRM the remainder of the district court’s decision.
I. Background
While working for the clerk of a federal district court in Utah, Mrs. Lang copied and took home a sealed affidavit. Once home, she read the document, which authorized police to use a tracking device in a narcotics investigation, and discussed its contents with Mr. Lang, her husband.
Following this conversation, Mr. Lang traveled to a payphone at a nearby grocery store. Although neither of the Langs knew the subjects of the drug investigation, Mr. Lang called one of the suspects, German Perez. Because he knew that officers had tapped Mr. Perez’s phone, Mr. Lang requested that Mr. Perez call him back from another phone. Because he spoke little English and did not fully understand Mr. Lang, Mr. Perez had an associate return the call on the same phone, *1213 thus permitting FBI agents to record both calls.
During the second call, Mr. Lang informed the associate that federal agents had bugged the cell phone and were preparing to place a tracking device on one of their cars. Mr. Lang stated that he had obtained this information from a friend in the federal courthouse and that he had seen documents proving these facts. Mr. Lang then returned to his home, his absence allegedly unnoticed by his wife.
The next day, an individual visited the home of Galen Ure, a man listed in the stolen affidavit as buying heroin from Mr. Perez. The individual gave Mr. Ure the affidavit, stating that he received it “from somebody that thought he might know the people involved.” Although Mr. Ure’s heroin use impaired his memory, his description of the individual closely matched Mr. Lang.
That afternoon, federal agents interviewed Mrs. Lang. After first denying that she stole the documents, Mrs. Lang admitted that she had taken a copy of the affidavit home and discussed it with her husband. On hearing her husband’s voice on an FBI recording of his conversations with Mr. Perez, Mrs. Lang exclaimed “that’s my husband.” When then asked about her activities after discussing the affidavit with her husband, Mrs. Lang stated that she went to bed between 6:30 and 7:00 p.m. When the officers informed her that Mr. Lang called Mr. Perez between 6:15 and 6:30 p.m., she claimed instead to have gone to bed closer to 6:00 p.m.
At trial, a jury convicted Mrs. Lang on all charges. At sentencing, the district court set Mrs. Lang’s offense level at 30, resulting in a guideline range of 97 to 121 months. The district court, however, departed downward to an offense level of 21 based on (1) Mrs. Lang’s brief involvement as an accessory, which the district court believed removed her from the heartland of accessory-after-the-fact eases, and (2) a belief that Mrs. Lang’s theft was aberrant behavior given her education and employment history. The district court, ultimately, sentenced Mrs. Lang to a forty-six-month prison term, the maximum sentence for her offense level.
A jury also convicted Mr. Lang on all charges. At sentencing, the district court set Mr. Lang’s offense level at 28, resulting in a guideline range of 78 to 97 months. After departing downward to an offense level of 21 based on Mr. Lang’s allegedly brief involvement as an accessory, the district court sentenced him to a forty-six-month prison term, the maximum for his offense level. This appeal, and the government’s cross-appeal, followed.
II. Discussion
We face several issues on appeal. First, the government on cross-appeal argues that the district court erred in departing downward based on (1) the Langs’ limited participation in the conspiracy and (2) Mrs. Lang’s allegedly aberrant behavior in committing the crimes in question. Next, the Langs both contend that the district judge erred in failing to recuse herself sua sponte pursuant to 28 U.S.C. § 455(a). In addition, Mrs. Lang urges that (1) the district court erroneously determined her base offense level under the United States Sentencing Guidelines (“the Guidelines”), and (2) it wrongfully convicted her under 18 U.S.C. § 2071. Finally, Mr. Lang (1) asserts that the district court mistakenly admitted evidence and (2) challenges the sufficiency of the evidence on his conspiracy charge. We address each issue in turn.
A. United States’ Cross-Appeal: Downward Departures
1. Standard of Review
For most convictions, a sentencing court may depart from the sentence range *1214 set by the Guidelines only if it “finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines.” 18 U.S.C. § 3553(b)(1). We review both upward and downward departures under the four-part standard set forth in United States v. Jones, 332 F.3d 1294, 1299-1300 (10th Cir.), cert. denied, — U.S. -, 124 S.Ct. 457, 157 L.Ed.2d 330 (2003).
Under Jones, we must first “ascertain whether the district court set forth, in a written order of judgment, its specific reasons for departure.” Id. at 1299. Second, we must ensure that those reasons “advance the objectives set forth in section 3553(a)(2),” and do not violate “any specific prohibition in the Guidelines.” Id. (citations omitted). We review this second prong de novo. Id. “Third, we must consider whether the factors the district court relied upon were authorized under section 3553(b) and justified by the facts of the case.” Id. at 1299-1300 (internal quotations omitted). A factor is only “authorized” if it is “an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines.” Id. at 1300 (citations omitted). We review this “application of the Guidelines to the facts” de novo, and review the district court’s findings of fact for clear error. Id. at 1300 & n. 9. Finally, we must determine whether the sentence “departs to an unreasonable degree from the applicable guidelines range.” Id. “In reviewing the degree of departure, we give due deference to the district court” and uphold its sentence absent an abuse of discretion. Id. (citations omitted).
Mrs. Lang argues that the standard of review set forth in Jones does not apply to her case because Jones only addressed upward departures.[1] We disagree. Title 18, section 3742(e) of the United States Code, the statutory subsection that mandates de novo review, does not distinguish between upward and downward departures, stating only that “[w]ith respect to determinations under subsection (3)(A) or (3)(B), the court of appeals shall review de novo the district court’s application of the guidelines to the facts.” 18 U.S.C. § 3742(e)(4). Further, subsections (3)(A) and (3)(B) apply to all sentences “outside the applicable guideline range.” 18 U.S.C. § 3742(e)(3). This plain reading of the statutory language finds support in the decisions of other circuits. See United States v. Stockton, 349 F.3d 755, 764 (4th Cir.2003) (holding that 18 U.S.C. § 3742(e) applies to downward departures); United States v. Mallon, 345 F.3d 943, 945-7 (7th Cir.2003) (same). Therefore, based on the statute’s plain text, we reject Mrs. Lang’s argument and make explicit that 18 U.S.C. § 3742(e) mandates de novo review for both upward and downward departures.
2. Limited Participation Departure
The United States argues that we should reverse the Langs’ downward departures because the district court departed based on unauthorized considerations. As noted above
[t]o determine whether the factors [employed by the district court] are authorized, we look to 18 U.S.C. § 3553(b)(1), which provides that a district court may depart if there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commis *1215 sion in formulating the guidelines.” Jones, 332 F.3d at 1300 (quotations omitted).
For factors already considered by the Guidelines, “departure from the applicable guideline range is warranted only if the factor is present to a degree substantially in excess of that which ordinarily is involved in the offense.” U.S.S.G. § 5k2.0; see also United States v. Fagan, 162 F.3d 1280, 1284 (10th Cir.1998).
The district court departed in this case based on the Langs’ short involvement as accessories, reasoning that in such situations it would be “outside the heartland” to sentence the Langs based on “drug quantities from drug dealing that ha[d] gone on for an extended period of time.” We disagree.
The Langs’ limited participation as accessories does not warrant a downward departure because the Guidelines already account for an accessory’s minimal participation. Section 2X3.1 of the Guidelines relies on the minimal participation inherent for all accessories in deducting six levels from the base offense level of the underlying offense. U.S.S.G. § 2X3.1(a)(l). Moreover, § 3B1.2 directs a sentencing court to decrease a defendant’s offense level by 4 levels “[i]f the defendant was a minimal participant in any criminal activity” or by 2 levels “[i]f the defendant was a minor participant in any criminal activity....” U.S.S.G. § 3B1.2. The Guidelines note, however, that “[t]he adjustment from § 3B1.2 (Mitigating Role) normally would not apply [to an accessory] because an adjustment for reduced culpability is incorporated in the base offense level.” U.S.S.G. § 2X3.1, Application Note 2. As these provisions make clear, the Guidelines already consider an accessory’s limited participation. Therefore, the district court may depart downward on that basis only if the Langs’ involvement as accessories was exceptionally short.
Compared to that in other accessory cases, the Langs’ involvement, which ranged from a couple of hours to a day, was not exceptionally short. Individuals often act as accessories for a much shorter period. For instance, perjury “in respect to a criminal offense” falls under the Guidelines’ structure for accessory, see U.S.S.G. § 2J1.3, and yet a perjurer often violates the law for only a matter of seconds, see United States v. Renteria, 138 F.3d 1328, 1330 31 & 1334 (10th Cir.1998). Likewise, disposing of a weapon used to commit a felony may take only minutes, and yet this crime falls within the heartland of the accessory guidelines. See United States v. Martinez, 342 F.3d 1203, 1205 (10th Cir.2003). Therefore, because the Lang’s involvement was not exceptionally short, we find that the district court erred in departing downward on that basis. See e.g. United States v. Jimenez, 282 F.3d 597, 600-01 (8th Cir.2002).
3. Aberrant Behavior Departure
The district court also erred in departing downward on Mrs. Lang’s sentence based on the allegedly aberrant nature of her criminal behavior. The district court specifically based its aberrant behavior departure on the fact that Mrs. Lang “has gone to school, she’s graduated from high school, she’s trained herself through college, [and] she’s up until the recent period [had] a very good work ethic.”
These factors do not justify an aberrant behavior departure. Application Note 1 to § 5k2.20 of the Guidelines states that an aberrant behavior departure is only permissible if the defendant’s crime “(A) was committed without significant planning; (B) was of limited duration; and (C) represents a marked deviation ... from an otherwise law-abiding life.” U.S.S.G. § 5k2.20, Application Note 1. Even if Mrs. *1216 Lang satisfied points (A) and (B), she failed to meet the requirements of point (C). As the district court states, “there was a history and is a history of drug use [by Mrs. Lang].” Moreover, Mrs. Lang’s Presentence Investigation Report contains additional information that counsels against a finding that her behavior here “represents a marked deviation ... from an otherwise law-abiding life.” U.S.S.G. § 5k2.20, Application Note 1.
Furthermore, Mrs. Lang’s education and work history, on which the district court based its aberrant behavior departure, are discouraged factors that a district court should only consider in cases where the surrounding circumstances render the educational and employment accomplishments extraordinary. U.S.S.G. § 5H1.2; see also United States v. Alvarez-Pineda, 258 F.3d 1230, 1240 (10th Cir.2001). Neither the district court nor Mrs. Lang have provided any persuasive evidence that her education or employment history are exceptional. Therefore, given the overwhelming evidence that Mrs. Lang’s behavior was not aberrant, we find that the district court erred in granting Mrs. Lang an aberrant behavior departure.
B. Langs’ Joint Issue: Recusal
1. Standard of Review
Both Langs argue on appeal that the district judge erred in failing to recuse herself based on alleged appearances of partiality. See 28 U.S.C. § 455(a). When a party does not timely file a motion to recuse under 28 U.S.C. § 455(a), as is true in this case,[2] our circuit is divided on the appropriate standard of review. In United States v. Stenzel, 49 F.3d 658, 661 (10th Cir.1995), the court held that “[b]ecause the defendant made no timely objection [pursuant to § 455(a) ] the recusal issue was not preserved for appeal.” According to United States v. Kimball, 73 F.3d 269, 273 (10th Cir.1995), however, when “[defense counsel neither file[s] a pleading nor move[s] for recusal during trial ..., we decide under a plain error standard whether the district judge ... reasonably appeared to be so biased that we should order retrial with a different judge.”
While noting the conflicting standards raised by these two decisions,[3] we have neither the authority, see United States v. Edward J., 224 F.3d 1216, 1220 (10th Cir.2000) (“Under the doctrine of stare decisis, this panel cannot overturn the decision of another panel of this court barring en bane *1217 reconsideration, a superseding contrary Supreme Court decision, or authorization of all currently active judges on the court.”) (internal quotations omitted), nor the need to resolve this dispute today because the Langs’ § 455(a) appeals fail under either standard of review. By definition, the Langs lose if Stenzel controls because their § 455(a) appeal would be waived. For the reasons set forth below, their appeal also fails when reviewed for plain error under Kimball.
“To notice plain error under Fed. R.Crim.P. 52(b), the error must (1) be an actual error that was forfeited; (2) be plain or obvious; and (3) affect substantial rights, in other words, in most cases the error must be prejudicial, i.e., it must have affected the outcome.” United States v. Edgar, 348 F.3d 867, 871 (10th Cir.2003). Even if these conditions are satisfied, we have discretion to reverse only if the error “seriously affects the fairness, integrity, or public reputation of judicial proceedings.” Id.
2. Failure to Recuse Under Plain Error Revieiv
On appeal, the Langs argue that the district judge should have recused herself because: (1) prior to serving on the bench, she worked for the United States Attorney’s Office in Utah, where she became friends with Mr. Walz, the prosecutor in these cases; (2) her husband worked as an Assistant United States Attorney (“AUSA”) in the same office as Mr. Walz at the time of trial and sentencing; (3) she met with Mr. Walz’s wife and mother-in-law in her chambers during a recess in the trial; and (4) Mrs. Lang stole the documents in question while working in the same courthouse as the district judge.
Title 28, section 455(a) of the United States Code provides that “[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.” 28 U.S.C. § 455(a). Under this, standard, “[t]he trial judge must recuse himself when there is the appearance of bias, regardless of whether there is actual bias.” Bryce v. Episcopal Church of Colo., 289 F.3d 648, 659 (10th Cir.2002). “The test is whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge’s impartiality.” , Id. (internal quotations omitted). As such, we consider the totality of the circumstances when reviewing such claims, disregarding “the judge’s actual state of mind, purity of heart, incorruptibility, [and] lack of partiality.” Nichols v. Alley, 71 F.3d 347, 351 (10th Cir.1995).
Considering this claim under plain error review, we need not reach the troubling issue of whether the district judge erred in refusing to recuse herself, nor whether the judge’s decision affected the Langs’ substantial rights, because the error here — if any exists — does not satisfy the final prong of plain error review. See United States v. Cotton, 535 U.S. 625, 632, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002) (“[W]e need not resolve [this issue], because even assuming respondents’ substantial rights were affected, the error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings.”).
We admit that this conclusion seems counter-intuitive given the purpose and plain language of 28 U.S.C. § 455(a). On its face, it appears that a judge’s failure to “disqualify himself in any proceeding in which his impartiality might reasonably be questioned[,]” 28 U.S.C. § 455(a), would “seriously affect[] the fairness, integrity, or public reputation of judicial proceedings[,]” Olano, 507 U.S. at 736, 413 S.Ct. 1770 (internal quotations omitted).' In fact, using language similar to that contained in Olano, legislative history of 28 *1218 U.S.C. § 455(a) states that Congress drafted it to “promote public confidence in the impartiality of the judicial process.” Liljeberg v. Health Serv. Acquisition Corp., 486 U.S. 847, 871, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988) (Rehnquist, C.J., dissenting) (citing H.R.Rep. No. 93-1453, at 4 (1974), reprinted in 1971 U.S.C.C.A.N. 6351, 6355).
Nonetheless, our holding follows the Supreme Court’s recent jurisprudence interpreting the fourth prong of Olano, which strictly defines when courts can find this prong satisfied. In Johnson v. United States, 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), the district judge erroneously concluded that he, rather than the jury, should determine the materiality of Mr. Johnson’s allegedly false statements. Neither party objected at trial. On appeal, the Johnson Court found that the district court’s failure to give the issue of materiality to the jury violated the Fifth and Sixth Amendments to the Constitution. Id. at 468, 117 S.Ct. 1544. Nevertheless, the Court held that the error did not “seriously affeet[ ] the fairness, integrity or public reputation of the judicial proceedings” because of the overwhelming and essentially uncontroverted record evidence of materiality. Id. at 469-70, 117 S.Ct. 1544 (“On this record there is no basis for concluding that the error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings. Indeed, it would be the reversal of a conviction such as this which would have that effect.”).
In Cotton, the district court enhanced Mr. Cotton’s sentence based on the amount of drugs sold, even though the indictment did not mention drug quantity. Cotton, 535 U.S. at 628, 122 S.Ct. 1781. The government conceded that the indictment’s failure to allege the quantity of drugs sold by Mr. Cotton violated the Fifth Amendment. Id. at 632, 122 S.Ct. 1781. Nevertheless, the Cotton Court held that this error did not satisfy the fourth prong of Olano because the “overwhelming” and “essentially uncontroverted” record evidence supported the drug quantity finding. Id. at 633, 122 S.Ct. 1781. While agreeing “that the Fifth Amendment grand jury right serves a vital function” in our judicial system, the Court found this “no less true of the Sixth Amendment right to a petit jury, which ... did not, however, prevent us in Johnson from applying the longstanding rule that a constitutional right may be forfeited in criminal ... cases by the failure to make timely assertion of the right....” Id. at 634, 122 S.Ct. 1781. As in Johnson, the Cotton Court found that the harmful effect of reversing a sentence supported by overwhelming and essentially uncontroverted evidence superceded any impact on “the fairness, integrity or public reputation of judicial proceedings” from the district court’s Fifth Amendment violation. Id.
In light of Johnson and Cotton, we find that the purported error here does not satisfy Olano’s fourth prong. In Johnson and Cotton, the Supreme Court found that violations of the Fifth and Sixth Amendments did not overcome the “threat ... to the fairness, integrity, and public reputation of judicial proceedings” that would result from reversing convictions supported by overwhelming and essentially uncontroverted evidence. Id. (internal citations omitted). Any error in this case derives not from a constitutional violation, but from a statutory transgression. See Federal Trade Comm’n v. Cement Inst., 333 U.S. 683, 702, 68 S.Ct. 793, 92 L.Ed. 1010 (1948) (“[M]ost matters relating to judicial disqualification [do] not rise to a constitutional level.”); Walberg v. Israel, 766 F.2d 1071, 1076-77 (7th Cir.1985) (recognizing that statutes mandating recu-sal for actual bias have constitutional bases, unlike those that require recusal for “a mere appearance of bias or prejudice”). *1219 In light of Johnson and Cotton’s refusal to find that constitutional violations satisfy this test, we hold that státutory errors, such as the one alleged here, do not satisfy the final prong of Olmo when there is overwhelming and essentially uncontro-verted evidence of defendant’s guilt.
Because such evidence of the Langs’ guilt exists here, we deny their § 455 appeal. As stated above, the Langs were convicted of five different offenses. The government presented overwhelming evidence at trial to support these charges. Given this evidence and the paucity of contrary testimony in the record, we find that the government provided overwhelming and essentially uncontroverted evidence of the Langs’ guilt on all charges.[4] Accordingly, we find that the district judge did not commit plain error in failing to recuse herself under 28 U.S.C. §. 455(a).
C. Mrs. Lang’s Individual Appeals
1. Sentencing Guideline Base Offense Level Calculation
Mrs. Lang first argues that the district court erred in considering the entire quantity of drugs distributed by the Perez Organization when calculating her sentence. Relying on U.S.S.G. § 1B1.3, Application Note 10, she claims that the district court should only have considered the quantity of drugs that she knew, or reasonably should have known, the Perez Organization distributed. Under this interpretation, the amount of drugs distributed by the Perez Organization has no bearing on Mrs. Lang’s sentencing unless the district court finds that she knew, or reasonably should have known, of the enormity of their operation.
Based on its reading of U.S.S.G. § '2X3.1(a), Application Note 1, the district court disagreed. It interpreted the Guidelines to require a reasonable-knowledge finding only for specific offense characteristics of the underlying offense. Thus, because the scope of the Perez Organization’s distribution impacts the base offense level, rather than the specific offense characteristics, of the underlying narcotics trafficking offense, the district court did not look to Mrs. Lang’s reasonable knowledge of the scope of the distribution network. We review the district court’s interpretation of the Sentencing Guidelines de novo. United States v. Plotts, 347 F.3d 873, 876 (10th Cir.2003). This is an issue of first impression for our court.
The resolution of this issue rests on the interplay between § 2X3.1 and § 1B1.3 of the Guidelines. Section 2X3.1 states that the base offense level for an accessory after the fact conviction is “6 levels lower than the, offense level for the underlying offense.” U.S.S.G. § 2X3.1(a). Application Note 1 to that section defines “underlying offense” as “the offense as to which the defendant is convicted of being an *1220 accessory.” Id,., Application Note 1. It further directs the sentencing court to “Mpply the base offense level plus any applicable specific offense characteristics that were known, or reasonably should have been known by the defendant.” Id. Thus, § 2X3.1, applied in isolation, would only extend the reasonable-knowledge requirement to “specific offense characteristics” of the underlying offense.
Application Note 1 to § 2X3.1, however, casts doubt on this conclusion by directing-courts to “see Application Note 10 of the Commentary to § 1B1.3.” Id. Application Note 10 states that for “solicitation, misprision, or accessory after the fact, the conduct for which the defendant is accountable includes all conduct relevant to determining the offense level for the underlying offense that was known, or reasonably should have been known, by the defendant.” U.S.S.G. § 1B1.3, Application Note 10. Therefore, reading Application Note 10 in isolation would extend the reasonable-knowledge requirement to all conduct used to determine the sentence for the underlying offense, not only specific offense characteristics.
Other circuits are split on how to resolve this apparent contradiction. Supporting Mrs. Lang’s position, the Fifth and Sixth Circuits allow a sentencing court to consider only those drug quantities of which the defendant knew or should have known. See United States v. Warters, 885 F.2d 1266 (5th Cir.1989) (holding that a defendant can only be sentenced for misprision of felony based on drug quantities “that [he] knew, or should have known (or foreseen) ... w[ere] involved in the conspiracy”); United States v. Shabazz, 263 F.3d 603 (6th Cir.2001) (holding that U.S.S.G. § “1B1.3 [application note 10], brought in by the cross-reference in section 2X3.1, extends the [reasonable] knowledge requirement to ‘all conduct relevant to determining the offense level for the underlying offense’ ”); but see United States v. Cihak, 137 F.3d 252, 264 (5th Cir.1998) (finding in dicta that, contrary to existing circuit precedent, the “ ‘reasonable foreseeability’ [requirement] applies only to the ‘specific offense characteristic’”); United States v. Stephens, 906 F.2d 251, 253 (6th Cir.1990) (rejecting the reasonable-knowledge requirement without analysis). In reaching this conclusion, these circuits find the broad instruction in Note 10 to § 1B1.3 to be controlling. Shabazz, 263 F.3d at 608. They note that the alternate interpretation would read § 2X3.1’s “cross-reference to the commentary to section IB 1.3 out of the guideline[s].... If [the contrary] view were correct, it is difficult to see why Application Note 1 to section 2X3.1 cross-references section 1B1.3.” Id. at 608. Adopting the reasonable-knowledge requirement of § 1B1.3, these courts argue, “results in consistent treatment for adjustments for role in the offense, specific offense characteristics, and other sentencing factors and avoids creating one rule for a defendant’s knowledge of specific offense characteristics and another for other underlying adjustments.” Id. at 609.
While noting the valid concerns expressed by the Fifth and Sixth Circuits and the difficulty of this issue, we find the approach adopted in United States v. Girardi, 62 F.3d 943 (7th Cir.1995), more persuasive and hold that the reasonable-knowledge requirement in cases under § 2X3.1 applies only to specific offense characteristics of the underlying offense. Pursuant to the clear language of Application Note 1, the Girardi court found that the reasonable knowledge requirement applies only to specific offense characteristics, not the base offense level, of the underlying offense. Id. at 946 (“Neither Application Note 1 nor § 2X3.1 require that an accessory ‘know’ or ‘reasonably know" of the factors used to calculate the base offense level, such as the quantity of drugs involved in the offense.”) Id. at 946.
*1221 In settling on this interpretation, the Girardi court also highlighted that Application Note 10 to § 1B1.3 does not limit the accessory’s accountability, but merely provides that it “includes conduct ‘known’ or that ‘reasonably should have been known’ by the accessory.” Id. Since, according to the Guidelines, “[t]he term ‘includes’ is not exhaustive.... ” U.S.S.G. § 1B1.1, comment (n. 2), Application Note 1 of § 2X3.1, does not contradict Application Note 10. Instead, it sets forth another type of relevant conduct — that not reasonably foreseeable to the accessory — used to calculate an accessory’s base offense level.
For these reasons, we find that the interpretation presented by the Girardi court best resolves the prima facie tension between § 1B1.3 and § 2X3.1. Therefore, because drug quantity is not a specific offense characteristic of unlawfully trafficking heroin, U.S.S.G. § 2Dl.l(a)(3), we affirm the district court’s sentencing decision on this point.[5]
2. Violation of 18 U.S.C. § 2071
Mrs. Lang next alleges that the district court wrongfully convicted her of violating 18 U.S.C. § 2071 because the sealed record that she stole from the clerk’s office was a copy, not the original affidavit. We find this argument without merit based on the text of the statute.
We reach this conclusion after determining that a copy of an officially filed document falls within the statutory language of a “record, proceeding, map, book, paper, document, or other thing, filed or deposited with any clerk or officer of any court of the United States.” 18 U.S.C. § 2071. Although it is true that at times Congress has explicitly addressed document copies when it intends to include them in a statute, see 18 U.S.C. § 793(b) (“Whoever, for the purpose aforesaid, ... copies, takes, makes, or obtains ... any ... [item] of anything connected with the national defense.”), this is not always the case. Indeed, courts have interpreted statutes with similar language to § 2071 to cover copies despite the omission of the word “copies” from the statute. See, e.g., United States v. DiGilio, 538 F.2d 972 (3d Cir.1976), cert. denied, 429 U.S. 1038, 97 S.Ct. 733, 50 L.Ed.2d 749 (1976) (finding that, under 18 U.S.C. § 641, which omits the word copies, “when an employee copies a record on government equipment without authorization, the duplicate copy is a record for purposes of the statute”).[6] We, therefore, *1222 find that a copy of a government record itself functions as a record for purposes of § 2071.
Moreover, to the extent Mrs. Lang'argues that the copy was not itself “filed or deposited” as § 2071 requires, we disagree. Mrs. Lang admits in her brief that she stole a copy of the original filed affidavit-from the clerk’s office. ■ She also admits that the government agents deposited the affidavit in the intake box of the clerk’s office prior to her .copying of the document. Because the copy of a government record is itself a government record, so the copy of a filed and deposited government record is itself a filed and deposited government record.[7] ■ Because we find that (1) the copy of the affidavit itself is considered a government record, and (2) the affidavit had been filed and deposited in the clerk’s office, Mrs. Lang’s theft of .the affidavit copy violates § 2071.
D. Mr. Lang’s Individual Appeals
1. Admission of Mr. Ure’s Testimony
Mr. Lang argues that the district court erroneously admitted Galen Ure’s testimony. We review evidentiary rulings under an abuse of discretion standard and reverse district court rulings only' for “a clearly erroneous finding of fact or an erroneous conclusion of law or ... a clear error in judgment.” United States v. Jenkins, 313 F.3d 549, 559 (10th Cir.2002).
We find Mr. Lang’s argument without merit. The district court admitted Mr. Ure’s testimony as non-hearsay under Fed R. Evid. 801(d)(2)(E). We do not determine the applicability of Fed R. Evid. 801(d)(2)(E), however, because Fed R. Evid. 801(d)(2)(A) permits Mr. Ure’s testimony regarding Mr. Lang’s statements as a non-hearsay admission by party-opponent. See In re Slack-Horner Foundries Co., 971 F.2d 577, 579-80 (10th Cir.1992) (holding we may affirm on any grounds supported by the record,. even those not relied upon by the district court).
“A statement is not hearsay if .... [t]hé statement is offered against a party and is ... the party’s own statement, in either an individual or a representative • capacity....” Fed.R.Evid. 801(d)(2)(A). Under this rule, the government need only prove by a preponderance of the evidence that Mr. Lang made the statements in question to Mr.’ Ure. See United States v. Harrison, 296 F.3d 994, 1001 (10th Cir.2002) (“The Court determines ... [Rule 801(d)(2) ] under a preponderance-of-the-evidence ' standard”). Though Harrison pertains to Fed.R.Evid. 801(d)(2)(B), we find no law, and Mr. Lang presents hone, stating that we apply any different standard to statements under Fed.R.Evid. 801(d)(2)(A). See id. (citing Bourjaily v. United States, 483 U.S. 171, 175-76, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987), for the proposition that the preponderance-of-the-evidence standard applies to Fed.R.Evid. 801(d)(2)(B) even though Bourjaily addresses Fed.R.Evid. 801(d)(2)(E)).
The government satisfied this standard by presenting evidence that Mr. Lang both spoke’with Mr. Ure regarding thé FBI investigation and gave him a copy of the stolen affidavit. While Mr. Ure *1223 could not identify Mr. Lang definitively in court as the person with whom he spoke about the affidavit, all other evidence indicated that the individual in question was Mr. Lang.
First, Mr. Ure’s physical description of the man with whom he spoke greatly resembled Mr. Lang. Second, the substance of the alleged conversation strongly suggests that the speaker was Mr. Lang. The individual spoke of having a conversation with German Perez about the affidavit on the previous day, the same day that Mr. Lang admits to having discussed the affidavit with Mr. Perez. Also, the individual spoke of receiving the affidavit from a “friend ... that works down at the federal courthouse.” Mr. Lang’s wife worked in the federal courthouse and took the affidavit. Third, the individual gave Mr. Ure a copy of the affidavit. It is uncontroverted that Mr. Lang had access to the affidavit and to a copy machine. This evidence indicates by a preponderance of the evidence that Mr. Lang spoke to Mr. Ure. Mr. Ure’s testimony was, therefore, admissible as a non-hearsay admission by party-opponent.
2. Sufficiency of the Evidence — Conspiracy to Act as an Accessory
Next, Mr. Lang claims that insufficient evidence exists to convict him of conspiring with Mrs. Lang to act as an accessory after the fact to the drug trafficking operation. “We review the sufficiency of evidence in a light most favorable to the government to determine if there was sufficient evidence upon which a reasonable jury could find the existence of a conspiracy beyond a reasonable doubt.” United States v. Ailsworth, 138 F.3d 843, 850 (10th Cir.1998). “To obtain a conviction for conspiracy, the government must prove that (1) there was an agreement to violate the law; (2) Defendant knew the essential objectives of the conspiracy; (3) Defendant knowingly and voluntarily took part in the conspiracy; and (4) the coconspirators were interdependent.” Id. “In determining the sufficiency of the evidence, we review the record de novo.” United States v. Urena, 27 F.3d 1487, 1489 (10th Cir.1994), cert. denied, 513 U.S. 977, 115 S.Ct. 455, 130 L.Ed.2d 364 (1994).
Of the four elements of conspiracy, Mr. Lang claims only that insufficient evidence exists to support the first requirement, the existence of “an agreement to violate the law.” Ailsworth, 138 F.3d at 850. To prove an agreement, “[t]he government need not offer direct proof of an express agreement on the part of the defendant. Instead the agreement may be informal and may be inferred entirely from circumstantial evidence.” United States v. Whitney, 229 F.3d 1296, 1301 (10th Cir.2000) (citations omitted). Indeed, “the defendant’s participation in, or connection to, the conspiracy need only be slight, if there is sufficient evidence to establish that connection beyond a reasonable doubt.” Id. Acceptable circumstantial evidence of agreement could include: “a common motive, presence in a situation where one could assume participants would not allow bystanders, repeated acts, mutual knowledge with joint action, and the giving out of misinformation to cover up [the illegal activity].” Id. (quotations omitted).
The record evidence supports the conspiracy conviction. First, Mr. Ure testified that a person closely resembling Mr. Lang visited his house the day after Mrs. Lang removed the sealed documents from the clerk’s office. According to Mr. Ure, the individual told Mr. Ure that he “had this paper, and that he had gotten it from somebody that thought that he [the individual] might know the people that was [sic] involved that was in the paper.” Furthermore, Mr. Lang admitted in his tapped cell-phone conversations that he had “a friend ... that works down at the federal courthouse, and paperwork came through *1224 on you.” Further, after - Mrs. Lang returned from work with the affidavit, Mr. Lang admits that he and his wife discussed the affidavit and the people mentioned in it before he left the house.
•The Langs misrepresentations to the FBI further support a finding of sufficient evidence to prove the conspiracy conviction. Id. When first approached by FBI agents, Mrs. Lang stated that she went to bed between 6:30 and 7:00 p.m. on the day she stole the affidavit. After learning from the agents that Mr. Lang called the suspects at approximately 6:15 p.m., however, she abruptly changed her story, stating instead that she'went to bed at 6:00 p.m. Moreover,' Mrs. Lang initially told FBI agents that she had shredded the extra copy of the affidavit, only to admit later that she hád taken it home out of “curiosity.” In addition, Mr. Lang lied to FBI agents by denying that he called German Perez on the night that Mrs. Lang came home with the affidavit.
After reviewing the record, we have little difficulty concluding that sufficient evidence exists to allow a reasonable jury to find, beyond a reasonable doubt, that a conspiracy existed between the Langs to act as accessories to a drug trafficking operation.
III. Conclusion
Based on the foregoing; we REVERSE the district court’s downward departures for both Langs, remanding 'both cases for resentencing pursuant to 18 U.S.C. § 3742(f)(2)(B), and AFFIRM the decision of the district court on the remaining issues.

. To be timely, the Langs would have had to file a motion to recuse under 28 U.S.C. § 455(a) at trial because, as Mrs. Lang's trial counsel admits in an affidavit to the district court, they knew early in the trial of the evidence that allegedly required recusal. Compare United States v. Kimball, 73 F.3d 269, 273 (10th Cir.1995) (applying plain error review because the defendant knew at the pre-trial hearing of the facts underlying his § 455(a) appeal) with United States v. Pearson, 203 F.3d 1243, 1276 (10th Cir.2000) (finding a § 455(a) appeal timely raised, despite the failure to bring this issue before the district court, when facts underlying the appeal did not emerge until immediately before the district court pronounced sentence). Nevertheless, neither of the Langs filed a § 455(a) motion at trial.

. Both Langs cite United States v. Gigax, 605 F.2d 507, 510 (10th Cir.1979), for the proposition that we review unraised § 455 complaints under an abuse of discretion standard. We decided Gigax, however, before the Supreme Court released United States v. Olano, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Olano directs us to review un-raised errors under a four-step plain error standard. See id. at 731, 113 S.Ct. 1770. Accordingly, to the extent that Gigax reviewed unraised § 455 error for an abuse of discretion, following Olano, it is no longer good law. See United States v. Hernandez-Rodriguez, 352 F.3d 1325, 1333 (10th Cir.2003) (holding that an intervening Supreme Court case can overturn circuit precedent).

. Specifically, the government introduced evidence that (1) Mrs. Lang stole a copy of a sealed affidavit; (2) she took this document home where she discussed it with her husband; (3) Mr. Lang left immediately thereafter to a payphone where he contacted German Perez, a suspect listed oh the-affidavit, and warned his associate about his- bugged phone and the tracking device placed on a car used in his operation; (4) the next day, Mr. Lang visited the home of Galen Ure, another suspect listed on the affidavit, and, after discussing its contents, gave a copy of the affidavit to him; (5) Mrs. Lang admitted that the voice on the recording of the telephone call to Mr. Perez was that of Mr. Lang; (6) Mr. Lang lied to the FBI about his use of the pseudonym "Melvin” and-about his phone call to Mr. Perez; and (7) Mrs. Lang lied to FBI agents about her activities on the night in question and about stealing a copy of the affidavit. Although the Langs' claim that they did not conspire to obstruct justice or to act as accessories and Mr. Lang claims that he did not meet with Mr. Ure, the Langs offer little evidence to substantiate these claims or to attack the weight of government evidence against them.

. Despite the difficult task of interpreting these competing Guideline provisions, the rule of lenity does not persuade us to adopt the reading of the Guidelines favored by Mrs. Lang. "Lenity applies only when the equipoise of competing reasons cannot otherwise be resolved....” Johnson v. United States, 529 U.S. 694, 713 n. 13, 120 S.Ct. 1795, 146 L.Ed.2d 727 (2000). See also United States v. Wilson, 10 F.3d 734, 736 (10th Cir.1993) ("The rule’s application is limited to cases where, after reviewing all available relevant materials, the court is still left with an ambiguous statute.”); Federal Statutes and Regulations, 117 Harv. L.Rev. 459, 468 (2003) ("[T]here is noteworthy consensus on the Court that the rule of lenity should always be subordinated ... that is, [used] only to resolve cases of equivocal ambiguity.”). Having carefully considered both interpretations and concluded that the language of the Guidelines best supports the approach taken by the Seventh Circuit in Girardi, we are not faced with a case of equivocal ambiguity and need not apply the rule of lenity.

. Although the DiGilio court reached this result pursuant to 18 U.S.C. § 641, rather than § 2701, we find it persuasive that both statutes employ strikingly similar language. Compare 18 U.S.C. § 2071(a) (prohibiting the "tak[ing] or cariy[ing] away [of] any record ..., paper, document, or other thing, filed or deposited with any clerk or officer of any court of the United States”) with 18 U.S.C. § 641 (prohibiting "converging] to his use or *1222 the use of another ... -any record ... or thing of value of the United States”). Furthermore, neither statute discusses copies of government documents or defines the term 'record' in this context. .Accordingly, a finding that copies of government records are themselves records under 18 U.S.C. § 641 applies equally under 18 U.S.C. § 2071(a).

. Noting the move by courts and other government agencies to electronic filing, see, e.g., David Harper, Federal Courts to Start Taking Filings Over Internet, Tulsa World, Aug. 31, 2003, at A21, any distinction that now remains between the filed status of originals and copies is likely to diminish further.