**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**October 11, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

FILIPE FRANCO-GUILLEN,

Defendant-Appellant.

No. 06-3122
(District of Kansas)
(D.C. No. 05-CR-10193-MLB)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, **McKAY**, and **GORSUCH**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Following a jury trial, Felipe Franco-Guillen was convicted of a single count of illegal reentry after deportation following conviction for an aggravated

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

felony, in violation of 18 U.S.C. § 1326(a), (b)(2). Franco-Guillen appeals his conviction and sentence, contending certain comments connecting his ethnicity and a propensity for lying made by the district court judge created a sufficient appearance of bias that the judge should have *sua sponte* recused himself pursuant to 28 U.S.C. § 455(a).

Franco-Guillen and the government originally entered into a plea agreement. During the plea colloquy, Franco-Guillen acknowledged *inter alia* that no promises had been made as to the sentence he would ultimately receive and that he was facing a twenty-year maximum penalty. The district court accepted the guilty plea. At the sentencing hearing, the district court asked Franco-Guillen if he was satisfied with the contents of the presentence report ("PSR"). Franco-Guillen expressed, through an interpreter, either surprise, frustration, and/or dissatisfaction with the sentencing range set out in the PSR; he further stated his attorney had indicated he would receive a sentence of between twelve and fifteen months. In response, the district court abruptly, and without any examination of the reasons for Franco-Guillen's discontent, set aside the guilty plea and ordered the case to trial. The colloquy at sentencing indicates as follows:

> THE COURT: Is there anything in the [PSR] that you want to change or correct?
> INTERPRETER WORTHINGON: I would just like the opportunity to speak before I'm sentenced.

THE COURT: But you're satisfied with the contents of the [PSR]?

INTERPRETER WORTHINGON: Not very well.

THE COURT: What's there in this [PSR] that you are not satisfied with?

INTERPRETER WORTHINGON: Because the other time before I came to court, I reached an agreement with my attorney that we were with an agreement between 12 and 15 months. The contract, when I came here, we signed that 12 to 15 month agreement.

THE COURT: What? You didn't sign any agreement that said—with [defense counsel] that said that you were gonna serve 12 to 15 months. Where is a copy of that?

INTERPRETER WORTHINGON: No, we had an agreement.

THE COURT: Oh yeah. Listen, I'm setting this aside. This is going to trial. **I will not put up with this from these Hispanics or anybody else, any other defendants**. You didn't have any kind of agreement like that with [counsel]. [Counsel] probably may have given you some idea of what he thought your sentence was; but when I took your guilty plea, you told me under oath that you understood that whatever he told you was merely his advice and was not a promise. Now, I'm not putting up with this. **I've got another case involving a Hispanic defendant who came in here and told me that he understood what was going on and that everything was fine and now I've got a 2255 from him saying he can't speak English. And he is lying because he told me he could.** So this—the plea agreement is set aside. You're going to trial my friend. When can you be ready.

[PROSECUTOR]: Your Honor—

THE COURT: And let me tell you this, sir. You've got a long prison record and you've got more aliases than I've seen anybody have except one individual down in Las Cruces, New Mexico, and you are facing 20 years if you're convicted by a jury. When can this case be ready for trial?

[PROSECUTOR]: Just within a matter of ten days or less, Your Honor.

THE COURT: Set the case. We'll notify you when it's ready. Nobody can come in here and lie to me and get away with it.

Thereafter, the district court summarily denied Franco-Guillen's additional requests to waive a jury trial and to have the matter tried to the district court.

After the jury convicted Franco-Guillen of illegal reentry, the district court denied Franco-Guillen's request for a reduction in his offense level for acceptance of responsibility and sentenced Franco-Guillen to a term of forty-six months, a sentence in the middle of the advisory sentencing range.

On appeal, Franco-Guillen asserts the district court's references to his ethnicity, especially where those comments seem to link Franco-Guillen's ethnicity with a propensity to lie, created an appearance of bias sufficient to trigger a *sua sponte* duty on the part of the district court to recuse pursuant to 28 U.S.C. § 455(a). In an admirable and appreciated expression of candor, the United States agrees that, although the record is devoid of any indication of actual bias, the district court's comments created a sufficient appearance of bias so that Franco-Guillen's conviction should be vacated and the matter remanded for further proceedings before a different district court judge.[1]

"Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). By its terms, § 455(a)'s recusal requirement

---

[1]The Supreme Court has recognized that "the United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereign whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Strickler v. Green*, 527 U.S. 263, 281 (1999). We laud the government attorneys in this case for living up to that high standard.

arises *sua sponte* when the judge's impartiality might be reasonably questioned. *United States v. Pearson*, 203 F.3d 1243, 1276 (10th Cir. 2000). "The trial judge must recuse himself when there is the appearance of bias, regardless of whether there is actual bias." *Bryce v. Episcopal Church*, 289 F.3d 648, 659 (10th Cir. 2002). "The test is whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality." *Id.* (quotations omitted). This court will "consider the totality of the circumstances when reviewing such claims, disregarding the judge's actual state of mind, purity of heart, incorruptibility, [and] lack of partiality." *United States v. Lang*, 364 F.3d 1210, 1217 (10th Cir. 2004) (quotation omitted).

The judge's statements on the record would cause a reasonable person to harbor doubts about his impartiality, without regard to whether the judge actually harbored bias against Franco-Guillen on account of his Hispanic heritage. *See Liteky v. United States*, 510 U.S. 540, 555 (1994) (giving as an example of an appearance of bias requiring recusal when a trial judge in a World War I espionage case allegedly said, "[o]ne must have a very judicial mind, indeed, not [to be] prejudiced against German-Americans" because their "hearts are reeking with disloyalty"). When at the initial sentencing hearing the district judge perceived that Franco-Guillen was lying about his understanding of the plea agreement, the judge stated, "I will not put up with this from these Hispanics or anybody else, any other defendants." The judge compounded the impropriety of

his reference to defendant's ethnicity when he then stated: "I've got another case involving a Hispanic defendant who came in here and told me that he understood what was going on and that everything was fine and now I've got a 2255 from him saying he can't speak English." While the district court's statements may well reflect frustration with Franco-Guillen's apparent, albeit unexplored, contradictions between the change of plea hearing and the sentencing hearing, his reference to Hispanics and his use of an example of another Hispanic defendant in discussing Franco-Guillen's perceived lack of truthfulness would cause a reasonable person "to harbor doubts about the judge's impartiality" in this case.

Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **reverses** Franco-Guillen's conviction and **remands** the matter to the district court for further proceedings. Upon remand, the case should be reassigned to a different district court judge who must vacate Franco-Guillen's conviction and begin proceedings anew.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge