**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Robert GIRARDI, Defendant–Appellant.**

No. 94–3179.

United States Court of Appeals,
Seventh Circuit.

Argued April 5, 1995.

Decided Aug. 9, 1995.

Barry Rand Elden, Asst. U.S. Atty. John L. Burley (argued), Office of U.S. Atty., Crim. Receiving, Appellate Div., Chicago, IL, for U.S.

Kent R. Carlson (argued), Chicago, IL, for Robert Girardi.

Before POSNER, Chief Judge, and CUMMINGS and MANION, Circuit Judges.

MANION, Circuit Judge.

Robert Girardi, a member of a grand jury, was indicted for communicating secret information to a friend and others. Specifically, he was charged with criminal contempt of court, seeking to receive money in return for committing acts in violation of his official duties as a grand juror, and obstruction of justice. Following a jury trial, he was convicted on all counts and sentenced to 97 months in prison. Girardi now appeals his sentence, claiming that the district court erred in calculating his base offense level, in enhancing his sentence for obstruction of justice, and in denying him a reduction for acceptance of responsibility. We affirm.

## I. Statement of the Case

On September 8, 1992, Chief Judge James B. Moran of the United States District Court for the Northern District of Illinois convened a Special October 1992 Grand Jury. The grand jury was scheduled to conduct business for 18 months. On January 4, 1993, defendant Robert Girardi was sworn in as a member of the grand jury to replace a member who was unable to complete his service.

Before being sworn in, Girardi was informed of the secret nature of the grand jury proceedings and his obligation not to disclose matters occurring before the grand jury to persons outside the grand jury. Girardi took an oath to uphold the secrecy of the grand jury proceedings. However, when Girardi learned that the grand jury was investigating a large-scale marijuana conspiracy in which his life-long friend, Richard Gelsomino, was involved, Girardi violated his oath by informing Gelsomino of the grand jury proceedings. During 1993, Girardi met with Gelsomino approximately twenty times. During those meetings Girardi provided Gelsomino with confidential information concerning the grand jury's investigation into the marijuana conspiracy.

In July of 1993, Gelsomino and others were indicted for their involvement in the marijuana conspiracy. Even following the indictment, Girardi continued to provide Gelsomino with secret grand jury information. Toward the end of 1993, however, Gelsomino became suspicious; he thought that Girardi was working with the government and trying to set him up. Gelsomino probably also realized that his best chance of avoiding a substantial sentence based on the marijuana conspiracy indictment was to cooperate with the FBI. Accordingly, he agreed to cooperate with federal agents in an undercover investigation of Girardi. By reason of Gelsomino's cooperation, Girardi, formerly part of the hunt, now became the hunted.

Gelsomino, under the direction and supervision of the FBI, then proceeded to tape-record his conversations with Girardi. In the taped conversations, Girardi disclosed accurate and detailed information about the grand jury proceedings. Girardi also commented on tape that he had been providing Gelsomino with grand jury information for "almost a year" and that he had not held anything back from Gelsomino. On the tapes, Girardi also indicated that he was interested in selling the grand jury information. Gelsomino indicated that he knew some people who might be interested in buy-

ing the grand jury information. Gelsomino then arranged for meetings between Girardi and a federal agent who was posing as an organized crime member interested in purchasing the grand jury information. At these meetings, Girardi agreed to provide secret grand jury information in exchange for $2,000 per month, and he accepted a $1,000 advance.

Thanks to Gelsomino's assistance, the government successfully indicted Girardi in a three-count indictment.[1] All three counts of the indictment alleged that while Girardi was a member of a federal grand jury he improperly disclosed grand jury matters in violation of the laws requiring secrecy of grand jury proceedings. Specifically, count one charged Girardi with criminal contempt of court for disobeying orders and rules of the United States District Court for the Northern District of Illinois, in violation of 18 U.S.C. § 401(3). Count two charged Girardi with seeking to receive and receiving money in return for committing acts in violation of his official duties as a grand juror, in violation for 18 U.S.C. § 201(b)(2)(C). Count three charged Girardi with obstruction of justice for disclosing matters occurring before the grand jury to persons who were subjects of the grand jury's investigation, in violation of 18 U.S.C. § 1503.

Girardi pleaded not guilty and at trial presented a defense of entrapment. Specifically, Girardi claimed that he was entrapped when the government employed his longtime friend Gelsomino to ask for secret grand jury information and to suggest that Girardi sell that information to other persons being investigated by the grand jury. In support of his entrapment defense, Girardi testified that prior to December of 1993, he had not provided Gelsomino with any secret information (other than the fact that Gelsomino's name had come up during the grand jury investigation).

The jury rejected Girardi's entrapment defense and returned a verdict of guilty on all counts. The district court then sentenced Girardi to 97 months in prison. This sentence included an enhancement for obstruction of justice premised on the district court's finding that Girardi perjured himself by testifying that he had not provided Gelsomino with grand jury information prior to December of 1993. Girardi appeals his sentence.

## II. Analysis

On appeal, Girardi contends that the district court improperly calculated his base offense level. He also claims that the district court erred in enhancing his sentence for obstruction of justice and in denying him a reduction for acceptance of responsibility.

### A. Base Offense Level

We first consider Girardi's challenge to his base offense level. To determine Girardi's base offense level, the district court applied Sentencing Guideline § 2X3.1. This Guideline applies to accessories after the fact and provides:

> Base Offense Level: 6 levels lower than the offense level for the underlying offense, but in no event less than 4, or more than 30.

U.S.S.G. § 2X3.1. Application Note 1 to § 2X3.1 provides that " '[u]nderlying offense' means the offense as to which the defendant is convicted of being an accessory."

In this case, the district court concluded that Girardi's convictions made him an accessory after the fact to the marijuana case being investigated by the grand jury. The district court reached this conclusion based on the fact that the grand jury was investigating Gelsomino's marijuana case and that Girardi had divulged information to Gelsomino about that investigation. The base offense level for Gelsomino's marijuana case was 32, based on the number of marijuana plants involved—2600—and based on Guideline § 2D1.1(c)(6). The district court then applied Guideline § 2X3.1, resulting in an offense level for Girardi of 26.

On appeal, Girardi does not dispute that § 2X3.1 is the appropriate Guideline section for determining his sentence. He also does

---

1. In appreciation for his assistance, the government entered into a plea agreement with Gelsomino in which he pleaded guilty to maintaining a place for manufacturing marijuana and the government dismissed the remaining counts concerning the marijuana conspiracy.

not dispute that the underlying offense considered for purposes of § 2X3.1 should be Gelsomino's marijuana case or that the base offense level for the marijuana offense was 32. Rather, Girardi claims that for purposes of § 2X3.1 he had to know or reasonably know that 2600 marijuana plants were involved in Gelsomino's case in order to be sentenced based on the offense level of 32, which applies to that amount of marijuana. In support of his position, Girardi cites Application Note 1 to § 2X3.1. Application Note 1 instructs the court to: "Apply the base offense level plus any applicable specific offense characteristics that were known, or reasonably should have been known, by the defendant. . . ."

■ Application Note 1 does not support Girardi's position. That Application Note only requires "specific offense characteristics" of the underlying offense to be "known" or "reasonably known." When the underlying offense is a drug-related offense, the "specific offense characteristics" merely include the possession of a weapon during the offense, § 2D1.1(b)(1), or the use of a private aircraft to import or export the controlled substance, § 2D1.1(b)(2). The quantity of drugs is not a specific offense characteristic, but rather a factor taken into account in determining the base offense level. U.S.S.G. § 2D1.1(a)(3). Neither Application Note 1 nor § 2X3.1 require that an accessory "know" or "reasonably know" of the factors used to calculate the base offense level, such as the quantity of drugs involved in the offense.

In response, Girardi cites Application Note 10 to Guideline § 1B1.3, which provides: "In the case of . . . accessory after the fact, the conduct for which the defendant is accountable includes all conduct relevant to determining the offense level for the underlying offense that was known, or reasonably should have been known by the defendant." U.S.S.G. § 1B1.3, comment. (n. 10). Girardi claims that this note requires an accessory after the fact to "know" or "reasonably

know" of all conduct relating to the underlying offense in order to be sentenced on the basis of that conduct.

■ But Application Note 10 does not say that an accessory after the fact's accountability is *limited* to conduct known or reasonably known; it merely states that the accessory's accountability *includes* conduct "known" or that "reasonably should have been known" by the accessory. Application Note 1 to § 2X3.1 goes even further by providing only that an accessory "know" or "reasonably should have known" of the specific offense characteristics. To read additional requirements into Application Note 10 would create a conflict with Application Note 1, and we must read the Guidelines so as to give effect to all provisions if possible. Moreover, Guideline § 1B1.3, the Guideline section to which Note 10 applies, provides that it applies "unless otherwise specified." Thus, even if there were a conflict, § 2X3.1 and its Application Notes must govern over the more general Application Note 10 to § 1B1.3. Accordingly we conclude that in sentencing a defendant pursuant to § 2X3.1 where the underlying offense is a narcotics-related case, the defendant need not "know" or "reasonably know" of the quantity of drugs involved.[2] We therefore conclude that the district court did not err in assessing Girardi's offense level at 26, which was 6 levels lower than level 32 required for the underlying offense of conspiring to distribute 2600 marijuana plants.

### B. Obstruction of Justice

■ After setting Girardi's base offense level at 26, the district court enhanced his offense level by two more levels for obstruction of justice. The judge concluded that Girardi had perjured himself at trial by testifying that he had not provided Gelsomino with any grand jury information (other than the fact that Gelsomino's name had come up) prior to December of 1993. This testimony directly conflicted with the tape-recorded conversations between Girardi, Gelsomino

2. Moreover, even if Girardi needed to know or reasonably know of the quantity of marijuana involved in the underlying offense, the district court concluded that as a grand juror hearing testimony for several months he should have known that more than 2600 marijuana plants were involved in the conspiracy, and that finding was not clearly erroneous.

and the undercover agent. In those tape-recorded conversations, Girardi stated that he had provided Gelsomino with information from the grand jury proceedings for a year and that he had held nothing back. The district court concluded that Girardi had committed "blatant perjury" and enhanced his sentence for obstruction of justice. "Under the Guidelines, a defendant can be given a two-level enhancement for obstruction of justice if he committed perjury." *United States v. Dillard*, 43 F.3d 299, 308 (7th Cir. 1994); U.S.S.G. § 3C1.1, comment. (n. 3). We review the district court's finding that the defendant committed perjury and thereby obstructed justice under the clearly erroneous standard. *Dillard*, 43 F.3d at 308.

 Girardi contends that the district court committed clear error in enhancing his sentence for the alleged perjury because any claimed perjury was immaterial. *United States v. Kaufmann*, 985 F.2d 884, 899–900 (7th Cir.1993) ("False testimony as to a material fact is subject to an enhancement at sentencing."). Under § 3C1.1, a false statement is material when that statement, "if believed, would tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1, comment. (n. 5). The perjury in this case went directly to Girardi's defense of entrapment and was, therefore, clearly material.

Girardi also contends that reversal is required because the court failed to make specific findings establishing that he committed perjury. While "it is preferable for a district court to address each element of the alleged perjury in a separate and clear finding, it is sufficient 'if the court makes a finding of an obstruction or impediment of justice that encompasses all of the factual predicates for a finding of perjury.'" *Dillard*, 43 F.3d at 308–09. Here, the district court heard from both the government and the defendant concerning the alleged perjury and, after hearing the arguments and reviewing the PSI report, the district court concluded that Girardi had committed "blatant perjury." In doing so, the district court also adopted the PSI report, including its statements concerning Girardi's perjury. This is more than sufficient to support an enhance-

ment for obstruction of justice under the Guidelines. *Dillard*, 43 F.3d at 309 (district court's statement that defendant committed perjury sufficient to support an obstruction of justice enhancement); *United States v. Rodriguez*, 995 F.2d 776, 779 (7th Cir.1993) (district court's determination encompassed the factual predicates of perjury where the court found that defendant "made a number of denials going to the very heart of the case," and that defendant's version of facts "simply didn't square with reality.").

### C. Acceptance of Responsibility

 Girardi finally contests the district court's refusal to grant him a two-level reduction for acceptance of responsibility. We review the district court's denial of an acceptance of responsibility reduction for clear error. *United States v. Tolson*, 988 F.2d 1494, 1497 (7th Cir.1993). Denial of such a reduction is appropriate where the defendant has committed perjury. In fact, where perjury has been committed, only extraordinary circumstances will entitle the defendant to a reduction for acceptance of responsibility. U.S.S.G. § 3E1.1, comment. (n. 4). The district court did not find that such extraordinary circumstances exist and given the facts in this case, we cannot say that that finding was clearly erroneous.

### III. Conclusion

The district court did not err in assessing Girardi with a base offense level of 26. The district court also did not err in enhancing Girardi's sentence for obstruction of justice based on his perjury, or in denying him a reduction for acceptance of responsibility. For these and the foregoing reasons, we

AFFIRM.