PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

TURNER DAVID STOKES,
          *Defendant-Appellant.*

No. 03-4067

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
John T. Copenhaver, Jr., District Judge.
(CR-02-154)

Argued: August 25, 2003

Decided: October 15, 2003

Before WILKINS, Chief Judge, and TRAXLER and
GREGORY, Circuit Judges.

Affirmed in part and vacated and remanded in part by published opinion. Chief Judge Wilkins wrote the opinion, in which Judge Traxler and Judge Gregory joined.

## COUNSEL

**ARGUED:** Edward Henry Weis, Assistant Federal Public Defender, Charleston, West Virginia, for Appellant. Michael Harvard Spencer, Assistant United States Attorney, Charleston, West Virginia, for Appellee. **ON BRIEF:** Mary Lou Newberger, Federal Public Defender, Charleston, West Virginia, for Appellant. Kasey Warner, United States Attorney, Charleston, West Virginia, for Appellee.

**OPINION**

WILKINS, Chief Judge:

Appellant Turner David Stokes pled guilty to mailing a threatening communication, *see* 18 U.S.C.A. § 876(c) (West Supp. 2003). He claims that the district court erred at sentencing by imposing an enhancement under *U.S. Sentencing Guidelines Manual* § 2A6.1(b)(2) (2002) and denying a reduction under U.S.S.G. § 2A6.1(b)(5). We vacate the enhancement, affirm the denial of the reduction, and remand for resentencing.

I.

The basis for this prosecution was a letter Stokes mailed to his wife, whom he suspected of infidelity. As is relevant here, the letter appeared to threaten the lives of Stokes' wife, "the man or men you are with," and Stokes' three children. J.A. 49. (The full letter is reproduced in an appendix to this opinion.)

The presentence report prepared after Stokes pled guilty recommended an adjusted offense level of 10, representing a base offense level of 12 reduced by two levels for acceptance of responsibility, *see* U.S.S.G. § 3E1.1(a). Stokes asserted that his offense level should be reduced pursuant to § 2A6.1(b)(5), which authorizes a downward adjustment if (a) no other adjustments under § 2A6.1 apply and (b) "the offense involved a single instance evidencing little or no deliberation."[1]

---

[1] Section 2A6.1 provides in full:

  (a)  Base Offense Level:

     (1)  **12**; or

     (2)  **6**, if the defendant is convicted of an offense under 47 U.S.C. § 223(a)(1)(C), (D), or (E) that did not involve a threat to injure a person or property.

  (b)  Specific Offense Characteristics

     (1)  If the offense involved any conduct evidencing an intent to carry out such threat, increase by **6** levels.

The district court found that Stokes did not meet either of the requirements of § 2A6.1(b)(5). Regarding the first requirement, the court found that Stokes was eligible for an enhancement under § 2A6.1(b)(2) because his letter included threats against multiple people. The court further found that, in light of Stokes' acknowledged difficulties with reading and writing, his letter must have required significant deliberation. Based on these findings, the court rejected Stokes' request for a § 2A6.1(b)(5) reduction and instead imposed a two-level § 2A6.1(b)(2) enhancement. The court then sentenced Stokes to 21 months imprisonment.

## II.

Stokes first asserts that the enhancement for multiple threats was erroneous because his entire letter comprised a single threat, even though it was directed at multiple victims. We agree that the § 2A6.1(b)(2) enhancement does not apply.

This claim presents an issue of guideline interpretation, which we review de novo. *See Elliott v. United States*, 332 F.3d 753, 761 (4th Cir. 2003). In interpreting a guideline, we apply the ordinary rules of statutory construction. *See United States v. Bahhur*, 200 F.3d 917, 927 (6th Cir. 2000). These rules require us to give the guideline its plain meaning, as determined by examination of its "language, struc-

---

(2)   If the offense involved more than two threats, increase by **2** levels.

(3)   If the offense involved the violation of a court protection order, increase by **2** levels.

(4)   If the offense resulted in (A) substantial disruption of public, governmental, or business functions or services; or (B) a substantial expenditure of funds to clean up, decontaminate, or otherwise respond to the offense, increase by **4** levels.

(5)   If (A) subsection (a)(2) and subdivisions (1), (2), (3), and (4) do not apply, and (B) the offense involved a single instance evidencing little or no deliberation, decrease by **4** levels.

ture, and purpose." *United States v. Horton*, 321 F.3d 476, 479 (4th Cir. 2003) (internal quotation marks omitted), *petition for cert. filed* (U.S. May 19, 2003) (No. 02-10830). We must also examine the commentary accompanying the guideline, which "is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 508 U.S. 36, 38 (1993).

In construing § 2A6.1(b)(2), we begin with the proposition that, all other factors being equal, a defendant who has threatened multiple individuals deserves a more severe penalty than a defendant who has threatened only one person. Section 2A6.1 contains two provisions that might permit a district court to impose a greater sentence for the more culpable defendant. First, as noted above, § 2A6.1(b)(2) provides for a two-level increase "[i]f the offense involved more than two threats." And, Application Note 3(B) states:

> If the offense involved substantially more than two threatening communications to the same victim or a prolonged period of making harassing communications to the same victim, or if the offense involved multiple victims, an upward departure may be warranted.

The question we must answer is whether these provisions authorize both an enhancement and a departure when, as here, the defendant made a single communication threatening multiple people. We conclude that only a departure, not an enhancement, is appropriate.

Note 3(B) authorizes a departure for an offense that involved (i) "substantially more than two threatening communications to the same victim," (ii) "a prolonged period of making harassing communications to the same victim," or (iii) "multiple victims." The third portion of the note applies here. The key word within this portion of the note is "multiple," which means "consisting of, including, or involving more than one." *Webster's Third New Int'l Dictionary* 1485 (1981). Thus, Note 3(B) authorizes an upward departure if a single threatening communication names two or more victims. If § 2A6.1(b)(2) applies whenever a defendant threatens more than two victims, then a defendant who mails a single communication threatening three people could receive both a § 2A6.1(b)(2) enhancement and

a departure under Note 3(B). We do not believe the Sentencing Commission intended this result, as departures are generally reserved for factors that are not adequately taken into account in the applicable guideline. *See* U.S.S.G. § 5K2.0, p.s.

Our conclusion is buttressed by the fact that Note 3(B) imposes a far lower threshold for departures based on multiple victims than for departures based on the number of threatening communications. In the latter circumstance, a departure is permitted only if the defendant made "substantially more than two threatening communications." It appears that the reason for this stringent requirement is that in this scenario, a defendant is subject to a departure *in addition to* a § 2A6.1(b)(2) enhancement. If the Sentencing Commission had contemplated that a defendant who threatened several people in a single communication would be subject to a § 2A6.1(b)(2) enhancement, it would have included a word like "substantially" in the portion of Note 3(B) relating to multiple victims. *Cf. United States v. Adelman*, 168 F.3d 84, 87 (2d Cir. 1999) (concluding that none of the specific offense characteristics listed in § 2A6.1 cover threats against multiple victims).

In sum, Note 3(B) clarifies that the phrase "more than two threats," as used in § 2A6.1(b)(2), refers to the number of threatening communications, not the number of victims threatened.[2] Thus, the district court erred in imposing a § 2A6.1(b)(2) enhancement. We therefore vacate the enhancement and remand for resentencing.

III.

We next consider the refusal of the district court to reduce Stokes' offense level pursuant to § 2A6.1(b)(5). As to this issue, we affirm.

---

[2]There may be cases in which multiple threats issued within a single letter or conversation are so distinct in nature and purpose that they should not be treated as a single threat for purposes of § 2A6.1(b)(2). This is not such a case, however; the letter at issue here was brief, it was directed to a single recipient, and all of the threatening statements within it were similar in nature and were based on the same grievance.

The district court denied a § 2A6.1(b)(5) reduction based on two findings: (1) that Stokes made more than two threats and (2) that his letter evidenced substantial deliberation. Although we have already vacated the first of these findings, the second finding suffices to support the district court decision. As the district court observed, Stokes must have expended great effort in writing the letter because he has difficulty reading and writing. *Cf. United States v. Stevenson*, 126 F.3d 662, 665-66 (5th Cir. 1997) (stating that written threats generally require deliberation and suggesting that § 2A6.1(b)(5) reduction may be appropriate only in cases involving oral threats). Under these circumstances, the finding that Stokes' letter reflects more than minimal deliberation is not clearly erroneous. *See Elliott*, 332 F.3d at 761 (stating that factual determinations relating to application of guidelines are reviewed for clear error).

## IV.

For the foregoing reasons, we vacate Stokes' § 2A6.1(b)(2) enhancement, affirm the denial of a § 2A6.1(b)(5) reduction, and remand for further proceedings.[3]

*AFFIRMED IN PART; VACATED*
*AND REMANDED IN PART*

---

[3]We note that, while Stokes' appeal was pending, Congress enacted legislation providing for a de novo standard of review for certain departure decisions under the sentencing guidelines. *See* Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub. L. No. 108-21, § 401(d), 117 Stat. 650, 670. Because the district court did not depart from the sentencing guidelines range, we need not decide whether the provisions of the PROTECT Act apply to Stokes' case.

APPENDIX

First page of Stokes' letter:

Hello: Amy Joe
The Time Has Come For us
To say Good By IT Time for me
To Do what I sound Have Done A
Long Time ago. you And your people
Have Thak ing my life from me And
my Babies. By life on me, And
about me. For the Last Time,
Amy Be marrige To me And
sleeping with some one who I will
("Kill"). But the Time Have Come
Soon 5 of you will Died, in
St Albans. Before I go to "Hell"
O" The men or men you are with
's "#1 to Die".
Look for me I am come ing
Soon. RE pin your Sian

God Love you
So Do I Amy Joe
Stokes
Amy. what Do I have
you Tell me? with out
you

000049

Second page of Stokes' letter:

ThE Troubles of my heart
Look upon mine affliction
And my pain: And forgive All
my sins. HEaR, O LoRD when
I cRy with my voice. Have
mERcy also upon ME: o keep my
Soul, And deliveR ME; ThE LORD
is my light and my Salvation,
whom shall I FEAR?

GEN 3-21-25
2 Tim 13, 14, 15
Ephesians 5 22-33
PSAm 28

GoD Bless, you
GoD Love you
GoD is Wait for
you Ad
ME
By By

000050

Third page of Stokes' letter:

I Do Love
404

000051