**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellant,*

v.

WILLIAM TERRENCE CROSS, a/k/a Red,
*Defendant-Appellee.*

No. 03-4737

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

WILLIAM TERRENCE CROSS, a/k/a Red,
*Defendant-Appellant.*

No. 03-4752

Appeals from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Rebecca Beach Smith, District Judge.
(CR-03-10)

Argued: February 25, 2004

Decided: June 8, 2004

Before WILKINSON, TRAXLER, and SHEDD, Circuit Judges.

---

Affirmed in part, vacated in part, and remanded by published opinion. Judge Traxler wrote the opinion, in which Judge Wilkinson and Judge Shedd joined.

---

## COUNSEL

**ARGUED:** Michael James Elston, Assistant United States Attorney, Alexandria, Virginia, for the United States. Charles Russell Burke, Virginia Beach, Virginia, for William Terrence Cross. **ON BRIEF:** Paul J. McNulty, United States Attorney, Laura P. Tayman, Assistant United States Attorney, Alexandria, Virginia, for the United States.

## OPINION

TRAXLER, Circuit Judge:

Defendant William Terrence Cross was charged with using physical force to intimidate a witness in a federal drug conspiracy prosecution in order to influence her testimony and retaliate against her for providing to law enforcement officers information about the crimes being prosecuted. A jury convicted Cross of witness tampering, *see* 18 U.S.C.A. § 1512(b)(1) (West 2000 & Supp. 2003), and retaliating against a witness, *see* 18 U.S.C.A. § 1513(b)(2) (West Supp. 2003).

The district court sentenced Cross under the "Accessory After the Fact" sentencing guideline, which sets the base offense level at six levels below that used for "the underlying offense" but imposes a ceiling offense level of 30. United States Sentencing Commission, *Guidelines Manual* ("U.S.S.G.") § 2X3.1 (Nov. 2002). The offense level assigned for the underlying drug conspiracy offense was 38, reflecting the large quantity of drugs involved in the conspiracy. Finding insufficient evidence to show that Cross knew or reasonably should have known about the large drug quantities involved, the district court declined to use level 38 for the underlying drug conspiracy offense. The district court concluded that 26 was a more appropriate offense level for the underlying offense, and imposed a sentence of 100 months on each count, to be served concurrently. The government appeals. As discussed below, we vacate Cross's sentence and remand for resentencing.[1]

---

[1]On cross appeal, Cross challenges his convictions based on the sufficiency of the evidence. Having reviewed the briefs and considered oral argument from counsel on this issue, we conclude that the evidence was clearly sufficient to sustain the jury's guilty verdict and we summarily affirm Cross's convictions.

I.

On July 11, 2002, officers employed by the City of Suffolk Police Department recovered a large quantity of cocaine base from an apartment leased by Antoine Goodman, Cross's nephew, and Nichelle Lewis, Goodman's girlfriend. Goodman was charged with, and eventually pled guilty to, conspiracy to distribute and to possess with the intent to distribute five grams or more of crack cocaine and 500 grams or more of cocaine powder. *See* 21 U.S.C.A. §§ 846, 841(a)(1) (West 1999). For sentencing purposes, the district court attributed slightly over 23 kilograms of crack cocaine to Goodman as a result of his involvement in the conspiracy, yielding a base offense level of 38. *See* U.S.S.G. § 2D1.1(c)(1). Goodman received a thirty-year prison sentence.

Following the seizure of drugs at his apartment and the issuance of a warrant for his arrest, Goodman remained at large for nearly four months. Shortly after the July search of Goodman's apartment, Cross began looking for Nichelle. Nichelle had provided incriminating information about Cross's nephew Goodman to the police — primarily that Goodman had drugs and guns stashed at the apartment — that led directly to the issuance of the search warrant for the apartment and the resulting arrest warrant for Goodman. Immediately after the apartment was searched, officers took Nichelle to police headquarters for additional questioning. En route, with Nichelle riding in the front passenger seat, the police cruiser happened to drive past Cross such that "he would have had a clear view of the front of the vehicle." J.A. 91. Cross stopped suddenly and ducked into a nearby phone booth. Nichelle and her son were later taken to a protective shelter.

Cross then attempted to learn Nichelle's whereabouts from Thomasine Lewis, Nichelle's mother. Cross appeared at Thomasine's workplace and residence, and he warned Thomasine that she "better hope [Cross] find[s] [Nichelle] before somebody else find[s] her." J.A. 144. Thomasine refused to disclose any information to Cross.

On August 9, 2002, Cross spotted Nichelle, who had been attending a birthday party. Nichelle recalled at trial that Cross approached her, punching his open hand with his fist and warning, "I hope you got your life insurance and your son's life insurance paid up. You

going to testify against my nephew [Goodman], I'm going to kill you, B, I'm going to kill you." J.A. 117. Cross then punched Nichelle in the face and struck her repeatedly after she fell to the ground. Tiffany Simms, who was with Nichelle at the time, was at first unable to pull Cross away from Nichelle. Eventually, Tiffany and Nichelle were able to leave in a car driven by Nichelle's aunt. Nichelle was treated for bruises, cuts and abrasions at a hospital in Suffolk, Virginia, and released.

In December 2002, law enforcement officers finally located Goodman and arrested him for conspiracy to distribute crack cocaine. Cross was later charged with using physical force to influence and retaliate against a witness providing information to police officers in connection with a federal criminal prosecution.

In February 2003, Goodman pled guilty to the underlying drug conspiracy offense. Cross, however, insisted on trial. He testified in his own defense and presented a very different version of events from the one offered by Nichelle and Tiffany. According to Cross, Nichelle was upset that Goodman was being unfaithful to her, and she approached Cross to vent her feelings about the situation. Cross claims that Nichelle grabbed his shirt during this confrontation, and that he accidently hit her in the head with his elbow as he was trying to get away from her. Cross also presented the testimony of two acquaintances who supported Cross's story that Nichelle instigated the fight. The jury, however, did not believe that Nichelle was the aggressor and convicted Cross of witness tampering and retaliating against a witness.

Because the base offense level actually used for Goodman's sentence was 38, Cross's Presentence Report concluded that 38 was the offense level for the underlying offense under section 2X3.1(a). As level 32 was "**6** levels lower than the offense level for the underlying offense," U.S.S.G. § 2X3.1(a), the PSR recommended that the district court assign Cross an offense level of 30, the ceiling imposed by the guideline.

The district court rejected the recommendation of the Presentence Report, concluding that the offense level for Goodman's underlying offense should not include any increase based on drug quantity unless

Cross "knew or reasonably should have known about the drug quantities" involved in the underlying offense. J.A. 344. Finding insufficient evidence to establish Cross's knowledge of drug quantities, the district court used the base offense level "which applies to the crime of Antoine Goodman as charged, . . . not includ[ing] drug amounts and a weapon that were . . . credited to [Goodman] for sentencing purposes." J.A. 349. Based solely on the charge, the district court determined Goodman's offense level to be 26, the base offense level for conspiracy to distribute more than 5 but less than 20 grams of crack. *See* U.S.S.G. § 2D1.1(c)(7). Applying section 2X3.1, the district court assigned Cross an offense level of 20, six levels below the offense level for Goodman's offense as it was charged.[2] The government appeals that determination and seeks to have Cross resentenced.

## II.

The parties agree that the district court properly selected section 2X3.1 as the applicable guideline.[3] It provides as follows:

### § 2X3.1.  Accessory After the Fact

(a)   Base Offense Level: **6** levels lower than the offense level for the underlying offense, but in no event less than **4**, or more than **30**. However, in a case in which the conduct is limited to harboring a fugitive, the base offense level under this subsection shall not be more than level **20**.

---

[2]The probation officer recommended a 2-level obstruction of justice enhancement for false trial testimony. The district court rejected the obstruction enhancement, and the government does not challenge that decision on appeal.

[3]Ordinarily, the guideline for obstruction of justice covers offenses encompassed by 18 U.S.C.A. §§ 1512-1513. *See* U.S.S.G. § 2J1.2. However, section 2J1.2 contains a cross reference directing the sentencing court to apply section 2X3.1 "[i]f the offense involved obstructing the investigation or prosecution of a criminal offense . . . if the resulting offense level is greater than that determined [by applying section 2J1.2]." U.S.S.G. § 2J1.2(c)(1).

The parties also agree that Goodman's crack conspiracy conviction is the underlying offense for purposes of section 2X3.1(a).

The parties diverge, however, in their interpretation of how to determine the offense level of the underlying offense. The government contends that in applying section 2X3.1(a), the district court should have used the base offense level actually assigned for the underlying offense. Naturally, Cross urges us to affirm the district court's conclusion that under section 2X3.1(a), the "offense level for the underlying offense" cannot include any increase based on drug quantities attributed to the underlying drug conspiracy unless the defendant "knew or reasonably should have known of the drug quantities" involved. J.A. 341.

The question of how to determine "the offense level for the underlying offense" within the meaning of section 2X3.1(a) raises a guideline interpretation issue that we review de novo. *See United States v. Stokes*, 347 F.3d 103, 105 (4th Cir. 2003). Interpreting a guideline is no different from interpreting a statute; the standard rules of statutory construction apply. *See id.* Thus, we must "give the guideline its plain meaning, as determined by examination of its language, structure, and purpose." *Id.* (internal quotation marks omitted). Our examination of the guideline should include the relevant commentary, which "is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 508 U.S. 36, 38 (1993).

The Sentencing Commission has provided guidance on how to determine the offense level for the underlying offense under section 2X3.1(a). The commentary to section 2X3.1 directs the sentencing court to "[a]pply the base offense level plus any applicable specific offense characteristics that were known, or reasonably should have been known, by the defendant." U.S.S.G. § 2X3.1, cmt. n.1. According to this straightforward language, the "known, or reasonably should have known" requirement applies only to specific offense characteristics of the underlying offense, not to the base offense level or any of the factors used in its determination. *See United States v. Girardi*, 62 F.3d 943, 946 (7th Cir. 1995) ("Neither Application Note 1 nor § 2X3.1 require that an accessory 'know' or 'reasonably know' of the factors used to calculate the base offense level" but "only

requires 'specific offense characteristics' of the underlying offense to be 'known' or 'reasonably known.'").

Here, in requiring the government to demonstrate that Cross knew or should have known about the quantity of drugs involved in the underlying offense, the district court was treating drug quantity as a specific offense characteristic. We believe the district court was mistaken in its approach. Rather than a specific offense characteristic, drug quantity is merely a factor used to set the base offense level in a drug trafficking offense; it is the requisite *starting point* for establishing the base offense level. *See* U.S.S.G. § 2D1.1(a)(3); *see also United States v. Lang*, No. 02-4075, 2004 WL 848437, at *9 (10th Cir. Apr. 21, 2004) (noting that "drug quantity is not a specific offense characteristic" for which reasonable knowledge is necessary under section 2X3.1); *Girardi*, 62 F.3d at 946 (same). For drug trafficking offenses covered by section 2D1.1, specific offense characteristics include, for example, possession of a dangerous weapon, use of an aircraft, or distribution of narcotics in prison. *See* U.S.S.G. § 2D1.1(b). Such specific offense characteristics ratchet up the base offense level that was first determined by reference to the quantity of drugs involved. Thus, the district court erred in applying a reasonable knowledge requirement to drug quantity, which is not a specific offense characteristic under section 2D1.1(b).

Our decision in *United States v. Godwin*, 253 F.3d 784 (4th Cir. 2001), upon which Cross relies, is not to the contrary. In *Godwin*, the defendant was sentenced under section 2X3.1 for harboring a fugitive who was wanted for illegal possession of a weapon as a convicted felon. For purposes of section 2X3.1, the underlying offense was unlawful possession of a firearm by a prohibited person, which carries a base offense level of fourteen under section 2K2.1(a)(6). However, the guideline lists several factors that increase the base offense level from fourteen, including the defendant's criminal history. *See* U.S.S.G. § 2K2.1(a)(2) (establishing a base offense level of 24 for a defendant with "at least two felony convictions of either a crime of violence or a controlled substance offense"). Because the fugitive had multiple prior convictions for violent crimes, his base offense level was increased to level 24. Using level 24 as the underlying offense level under section 2X3.1, the district court assigned the defendant a base offense level of eighteen.

On appeal, this court concluded that the use of an underlying offense level that had been increased based on the fugitive's criminal record was "inconsistent with the plain language of section 2X3.1" because it was related *not to the offense but the offender*. *Godwin*, 253 F.3d at 786. Section 2X3.1 refers only to *the offense*. We observed that "[i]n most cases, the offense level for the underlying crime will be the same as the offense level actually assigned to the fugitive . . . because the majority of the offense guidelines set a base offense level that in no way takes into account the defendant's criminal record." *Id.* Thus, the offense level of the underlying offense for purposes of section 2X3.1 will generally be established by simply importing the base offense level actually assigned; *Godwin* merely carves out an exception in cases where the underlying base offense level was increased based upon criminal history or other factors not related to the offense conduct.

Drug quantity is a factor that obviously bears directly upon the underlying offense itself. It goes without saying that Congress has elected to treat the trafficking of greater drug quantities as a more serious crime than the trafficking of lesser amounts. Thus, the inclusion of drug quantity as a factor in the determination of the underlying offense level is consistent with the policy behind section 2X3.1 of "punish[ing] more severely those who act as accessories-after-the-fact to more serious crimes." *Godwin*, 253 F.3d at 788 (citing *Girardi* for the proposition that drug quantity relates to the underlying offense and need not be known by the accessory for purposes of section 2X3.1).

In sum, we conclude that under section 2X3.1 of the Sentencing Guidelines, the base offense level for a drug-related "underlying offense" should include any increase based on the quantity of drugs involved, without regard to whether the defendant knew, or reasonably should have known, the amount involved.

### III.

For the foregoing reasons, we affirm the convictions of Cross based on the sufficiency of the evidence. We vacate the sentence

imposed by the district court, however, and remand for resentencing in light of this opinion.

*AFFIRMED IN PART, VACATED IN PART,*
*AND REMANDED*