IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 21, 2008

Charles R. Fulbruge III
Clerk

No. 07-30452
c/w No. 07-30453

UNITED STATES OF AMERICA

Plaintiff - Appellant-Cross-Appellee

v.

RONALD KIMBROUGH

Defendant - Appellee-Cross-Appellant

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA

Plaintiff - Appellant

v.

TERRY CORDIER

Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana

Before REAVLEY, BENAVIDES, and OWEN, Circuit Judges.

REAVLEY, Circuit Judge:

Ronald Kimbrough and Terry Cordier were indicted for conspiracy to obstruct justice, obstruction of justice, and accessory after the fact because their

conduct resulted in members of a cocaine trafficking organization being informed about an investigation by the Drug Enforcement Administration. Kimbrough pleaded guilty to the conspiracy charge, while Cordier pleaded guilty to all three charges. The Government appeals the district court's calculation of the defendants' offense levels under the sentencing guideline for obstruction of justice rather than for accessory after the fact. We conclude that the district court's sentencing determinations were erroneous and remand for resentencing.

I.

In October 2004, the DEA began an investigation of Tyrone Mackey and cocaine trafficking in New Orleans, Louisiana. One of the Assistant United States Attorneys working on the case was Kimbrough's estranged wife. In January 2005, Kimbrough was at his wife's home and came across a draft application for a Title III wiretap that targeted Mackey and members of Mackey's organization. The draft affidavit discussed Mackey's drug trafficking, and it included information about a specific drug transaction involving 500 grams of crack cocaine. Unbeknownst to his wife, Kimbrough read the application and recognized the names of several people listed therein, including Mackey, who he knew to be a drug dealer. Kimbrough then contacted his life-long friend Cordier, who he also knew was friends with Mackey, and informed him about the investigation. Kimbrough read the document to Cordier and then replaced it to conceal from his wife the fact that he had discovered it.

The next day Cordier contacted Mackey and informed him that the Government was investigating Mackey's illegal drug activities and was tapping Mackey's phone. Mackey stopped using his telephone and instructed other members of the organization to also discontinue using their telephones. The disclosure of the investigation and the wiretap application hindered the investigation and prevented the DEA from discovering Mackey's drug supplier.

After being informed about the investigation, Mackey was still able to distribute a quantity of cocaine in the New Orleans area.

After Kimbrough and Cordier pleaded guilty, their respective presentence reports (PSRs) calculated both defendants' base offense levels in a similar manner. The PSRs began with the obstruction of justice guideline found in U.S.S.G. § 2J1.2, which yielded a base offense level of 14. The PSRs applied a three-level enhancement under § 2J1.2(b)(2) because the offense resulted in substantial interference with the administration of justice. After a two-level reduction for acceptance of responsibility, both defendants had a total offense level of 15 and a guideline range of 18 to 24 months.

The Government objected and argued that the offense levels should be determined based on the guideline for accessary after the fact found in U.S.S.G. § 2X3.1. It argued that under that guideline the applicable offense level is based on the offense level for the underlying offense, which in this case is a drug conspiracy to distribute between 15 and 50 kilograms of cocaine. The Government initially argued that Kimbrough's and Cordier's offense level should be determined by the drug quantity that the Mackey organization was able to distribute after the defendants tipped Mackey about the investigation. It later argued, however, that the relevant drug quantity was the amount the organization had distributed up to the time that the defendants informed Mackey about the investigation and that the defendants need not have known or foreseen the drug quantity.

The district court denied the Government's objection to the PSRs. It concluded that § 2X3.1 was not applicable because, although Kimbrough and Cordier knew that Mackey was a drug dealer, the defendants lacked sufficient knowledge of the drug quantities involved. The district court therefore adopted the PSRs. It sentenced Cordier to 24 months in prison, and it departed upward

from the guideline range to sentence Kimbrough to 30 months.  The Government appeals from the district court's guideline calculations.  Kimbrough has filed a cross-appeal challenging the district court's upward departure.

We hold that the district court erred by requiring the defendants to have specific knowledge of the drug quantities involved in the underlying offense to determine their base offense levels under § 2X3.1.[1]

II.

The crux of this case is whether the defendants' base offense levels should have been determined with reference to the guideline for obstruction of justice under § 2J1.2 or the guideline for accessory after the fact under § 2X3.1.  We review the district court's interpretation and application of the guidelines de novo and its findings of fact for clear error.  United States v. Griffith.[2]

For obstruction of justice offenses, the starting point is § 2J1.2, which assigns a base offense level of 14 and calls for a three-level enhancement "[i]f the offense resulted in substantial interference with the administration of justice."[3]  A cross-reference within the guideline directs that if the defendant "obstruct[ed] the investigation or prosecution of a criminal offense, apply § 2X3.1 (Accessory After the Fact) in respect to that criminal offense, if the resulting offense level is greater than that determined [under § 2J1.2]."[4]

Under § 2X3.1, the base offense level is "6 levels lower than the offense level for the underlying offense," except that the base offense level shall not be

_____

[1] Because we conclude that the district court erroneously calculated the defendants' guideline ranges, and we must remand for resentencing, we do not address Kimbrough's claim on cross-appeal that the court erroneously departed upward from the guidelines.

[2] 522 F.3d 607, 611 (5th Cir. 2008).

[3] U.S.S.G. § 2J1.2(b)(2) (2006).  Unless otherwise noted, all references to the guidelines in this opinion are to the 2006 version that was applicable to Kimbrough and Cordier.

[4] § 2J1.2(c).

less than 4 nor more than 30.[5]  For purposes of § 2X3.1, the "underlying offense" is generally "the offense as to which the defendant is convicted of being an accessory."[6]

Here, Cordier pleaded guilty to accessory after the fact, in violation of 18 U.S.C. § 3.  Because the applicable guideline is determined first with reference to the offense of conviction, the starting point for calculating Cordier's offense level should have been § 2X3.1.[7]  Cordier's offense level under § 2X3.1 will depend on the offense level for the underlying drug conspiracy, which in turn depends on the drug quantity involved in the offense.[8]

The drug quantity is also important in Kimbrough's case.  Kimbrough pleaded guilty to conspiracy to obstruct justice, in violation of 18 U.S.C. § 1512(k).  Thus, his starting point was § 2J1.2, which resulted in a total offense level of 15.  Kimbrough's conduct unquestionably obstructed the investigation of a criminal offense, however.  Therefore,  § 2J1.2's cross-reference to § 2X3.1 will be triggered if the offense level under § 2X3.1 is higher than 15.[9]  As with Cordier, Kimbrough's offense level under § 2X3.1 depends on the drug quantity involved in the underlying offense.[10] The underlying drug conspiracy here

---

[5] See § 2X3.1(a)(1)–(3).

[6] § 2X3.1, comment. (n.1).

[7] See U.S.S.G. § 1B1.2(a) ("Determine the offense guideline section in Chapter Two (Offense Conduct) applicable to the offense of conviction (i.e., the offense conduct charged in the count of the indictment or information of which the defendant was convicted).").  Although Cordier also pleaded guilty to conspiracy to obstruct justice and obstruction of justice, all counts are grouped into a single count under the grouping rules because all three counts were connected by a common criminal objective or constituted part of a common scheme or plan.  See § 3D1.2(b).

[8] See §§ 2D1.1(c), 2X3.1(a)(1).

[9] See § 2J1.2(c)(1).

[10] See §§ 2D1.1(c), 2X3.1(a)(1).

involved drug quantities that undeniably result in an offense level much higher than that achieved under § 2J1.2.[11]

The district court refused to apply § 2X3.1 because it found that for the guideline to apply Kimbrough and Cordier must have known or should reasonably have known that their conduct would result in further distribution of drugs after they disclosed the investigation, and the court determined they did not have such knowledge. Application Note 1 to § 2X3.1 instructs the court to "[a]pply the base offense level plus any applicable specific offense characteristics that were known, or reasonably should have been known, by the defendant, see Application Note 10 of the Commentary to § 1B1.3 (Relevant Conduct)."[12] We have previously addressed this application note and determined that "[t]he limitation on 'reasonable foreseeability' applies only to the 'specific offense characteristic,' not the base offense level." United States v. Cihak.[13] For drug offenses, drug quantity is not a specific offense characteristic. Thus, under Cihak, Kimbrough and Cordier were not required to know or to reasonably foresee the drug quantities involved in the underlying drug offense, and the district court's contrary determination was erroneous.[14]

The defendants argue that this reading of § 2X3.1 conflicts with Application Note 1's reference to Application Note 10 of § 1B1.3, as well as with

---

[11] For example, the draft wiretap affidavit indicated that the conspiracy involved at least 500 grams of crack cocaine. A drug offense involving at least 500 grams of crack cocaine has a base offense level of 36. See § 2D1.1(c). A reduction of six levels under the accessory guideline results in an offense level of 30. § 2X3.1(a)(1).

[12] § 2X3.1, comment. (n.1).

[13] 137 F.3d 252, 264 (5th Cir. 1998) (emphasis added).

[14] Id.; see also United States v. Girardi, 62 F.3d 943, 946 (7th Cir. 1995); United States v. Cross, 371 F.3d 176, 180–81 (4th Cir. 2004); United States v. Lang, 364 F.3d 1210, 1220–21 (10th Cir. 2004), reinstated by 405 F.3d 1060 (10th Cir. 2005); but see United States v. Shabazz, 263 F.3d 603, 608–09 (6th Cir. 2001).

the plain language of § 1B1.3, and with our decision in United States v. Warters.[15] Application Note 10 of §1B1.3 provides that if the offense at issue is accessory after the fact, "the conduct for which the defendant is accountable includes all conduct relevant to determining the offense level for the underlying offense that was known, or reasonably should have been known, by the defendant."[16] The defendants contend that this language requires a knowledge element for all conduct that is attributable to them. We agree with the Seventh Circuit that "Application Note 10 does not say that an accessory after the fact's accountability is limited to conduct known or reasonably known; it merely states that the accessory's accountability includes conduct 'known' or that 'reasonably should have been known' by the accessory."[17] Furthermore, the plain language of § 1B1.3(a) instructs that the general relevant conduct rules apply "[u]nless otherwise specified." Section 2X3.1's Application Note 1 plainly provides that the knowledge requirement applies to the specific offense characteristics, not the factors that determine the base offense level.[18]

The defendants contend that requiring knowledge only of specific offense characteristics of the underlying offense, and not for conduct comprising the base offense level, may result in accessories being punished equally severely, if not more so, than the principals. The accessory guideline takes into account an accessory's lesser culpability by requiring that the base offense level be set six

---

[15] 885 F.2d 1266 (5th Cir. 1989).

[16] U.S.S.G. § 1B1.3, comment. (n.10).

[17] Girardi, 62 F.3d at 946.

[18] Cihak, 137 F.3d at 264. For example, the specific offense characteristics of an underlying drug offense that defendants must know or reasonably should have known include the possession of a dangerous weapon, the use of an aircraft to import or export a controlled substance, and the distribution of a controlled substance in a prison. See § 2D1.1(b)(1)–(3).

levels below the underlying offense, with a cap in most cases at 30.[19]  The intent of the guidelines plainly is to begin with the principal's base offense level and then decrease accordingly for the accessory.  Drug trafficking offenses are considered more severe in nature as the quantity of drugs involved increases, and the guidelines thus provide for increased punishment for principals when larger drug quantities are involved.[20]  Determining the offense level under § 2X3.1 from the drug quantity in the underlying offense is reasonable to punish more severely "those who act as accessories-after-the-fact to more serious crimes."[21]

Our decision in Warters does not help the defendants.  Warters construed the guidelines for misprision of a felony under § 2X4.1 where the underlying offense was a drug conspiracy that occurred in 1988.[22]  There, the district court made no finding as to the drug quantity involved in the underlying offense, and we remanded for resentencing, holding that the district court must determine the base offense level by determining the actual amount of drugs involved in the conspiracy and the amount that the defendant knew or should have known or foreseen as relevant conduct.[23]  The guidelines and commentary for  misprision of a felony under § 2X4.1 and for accessory after the fact under § 2X3.1 are similar.  However, Warters was decided in September 1989 and construed a version of the Sentencing Guidelines that differs from the version at issue in the instant case.  Specifically, the guidelines construed in Warters did not contain

---

[19] § 2X3.1(a).

[20] See § 2D1.1(c).

[21] Cross, 371 F.3d at 182 (internal quotation and citation omitted).

[22] Warters, 885 F.2d at 1270.

[23] Id. at 1272–73.

the instruction in the current guidelines to apply the base offense level of the underlying offense plus specific offense characteristics that the defendant knew or should have known.[24]   Therefore, the Warters court was not faced with construing the limitation on foreseeability found in Application Note 1 to both § 2X3.1 and § 2X4.1.  We addressed that in Cihak, and we find that Cihak is the relevant precedent here.

Furthermore, even if Kimbrough and Cordier were required to foresee a drug quantity involved in the underlying drug offense, there was some evidence of such knowledge.  Kimbrough and Cordier both knew about Mackey's illegal drug activity, and the wiretap affidavit that Kimbrough read included the information that at least 500 grams of crack cocaine had been sold by the Mackey organization.  Kimbrough and Cordier therefore knew, or reasonably should have known, that the underlying offense involved substantial amounts of drugs.

We therefore hold that the district court erroneously calculated the defendants' base offense levels by requiring that they know or reasonably foresee the drug quantities involved in the underlying drug conspiracy.  Because the district court is required to consider the correctly calculated guideline range when imposing a sentence, Kimbrough and Cordier must be resentenced.[25]  On remand, the district court should begin with the correct guideline range and is free to consider all the facts and circumstances of the case, along with the factors

---

[24] See U.S.S.G. §§ 2X3.1, 2X4.1 (1988).

[25] See Gall v. United States, 128 S. Ct. 586, 596 (2007); United States v. Mares, 402 F.3d 511, 519 (5th Cir. 2005) ("This duty to 'consider' the Guidelines will ordinarily require the sentencing judge to determine the applicable Guidelines range even though the judge is not required to sentence within that range.").

in 18 U.S.C. § 3553(a), that it deems relevant to its individualized assessment of the proper sentence to be imposed.[26]

### III.

The district court's judgments are VACATED, and the cause is REMANDED for resentencing of both defendants.

---

[26] See Gall, 128 S. Ct. at 596–97.