**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-5189**

UNITED STATES OF AMERICA,

                    Plaintiff - Appellee,

          v.

ROBERT PADGETT, a/k/a Snoop,

                    Defendant – Appellant.

Appeal from the United States District Court for the Southern District of West Virginia, at Charleston.  Joseph R. Goodwin, Chief District Judge.  (2:09-cr-00160-1)

Submitted:  September 8, 2010          Decided:  October 7, 2010

Before NIEMEYER, MOTZ, and AGEE, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Mary Lou Newberger, Federal Public Defender, Jonathan D. Byrne, Appellate Counsel, George H. Lancaster, Jr., Assistant Federal Public Defender, Charleston, West Virginia, for Appellant. Charles T. Miller, United States Attorney, J. Christopher Krivonyak, Assistant United States Attorney, Charleston, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Robert Laver Padgett pleaded guilty to one count of escape, in violation of 18 U.S.C. § 751(a) (2006), and was sentenced to 24 months' imprisonment. On appeal, Padgett contends that the district court erred in not granting him a four-level offense reduction under United States Sentencing Guidelines Manual § 2P1.1(b)(3) (2008) for escaping from "non-secure custody." Given the circumstances of Padgett's escape, we agree with the district court that Padgett is not eligible for the reduction. We accordingly affirm.

In 1998, Padgett was convicted of conspiracy to possess and distribute crack cocaine and sentenced to 188 months' imprisonment. On January 14, 2009, Padgett was transferred from the Bureau of Prisons to Bannum Place, a halfway house in Rand, West Virginia. On June 11, 2009, two Deputy United States Marshals arrived at Bannum Place to return Padgett and several other residents back to Bureau of Prisons custody for rules violations. After a Marshal woke Padgett and requested that he accompany him to the dayroom, Padgett requested and was granted permission to use the restroom. Padgett then walked to the dayroom with the Marshal. As the Marshal moved forward to place restraints on Padgett, Padgett took off running through the front door and into the parking lot. Padgett ignored the Marshals' orders to stop and headed

2

into a wooded area at the back of a parking lot. One of the Marshals pursued Padgett and caught up with him after both men slid down an embankment. Padgett resisted the Marshal's efforts to handcuff him, and the Marshal tasered Padgett. Padgett was then taken back to Bannum Place without further incident. According to Padgett, he was attempting to throw his cell phone and cell phone charger — both contraband — into the river and was not actually attempting to escape the Marshals' custody.

Padgett was charged with one count of escape, in violation of 18 U.S.C. § 751(a). After Padgett pleaded guilty, a probation officer prepared a Presentence Report (PSR). The PSR calculated a base offense level of 13, with a criminal history category III. The PSR then recommended a two-level reduction for acceptance of responsibility and, originally, a four-level reduction under U.S. Sentencing Guidelines Manual § 2P1.1(b)(3) because Padgett escaped from a non-secure facility. The Government objected to this latter determination, and the probation officer agreed, removing that four-level reduction.

At sentencing, the district court declined to give the two-level reduction for acceptance of responsibility. The district court also overruled Padgett's objection to the PSR's rejection of the § 2P1.1(b)(3) reduction. The district court concluded that, although Bannum Place was a non-secure facility,

3

custody had been transferred to the United States Marshals at the time of the escape, creating a more significant confinement than § 2P1.1(b)(3) permitted. With an offense level of 13 and a criminal history category of III, the district court calculated Padgett's advisory Guidelines range as 18 to 24 months' imprisonment. After permitting argument on an appropriate sentence and hearing a statement from Padgett himself, the district court sentenced Padgett to 24 months' imprisonment. Padgett noted a timely appeal.

On appeal, Padgett argues that the district court erred in failing to apply the § 2P1.1(b)(3) reduction in this case. In reviewing any sentence, "whether inside, just outside, or significantly outside the Guidelines range," we apply a "deferential abuse-of-discretion standard." Gall v. United States, 552 U.S. 38, 41 (2007). We first "ensure[] that the district court committed no significant procedural error." Id. at 51. "If, and only if, we find the sentence procedurally reasonable can we 'consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard.'" United States v. Carter, 564 F.3d 325, 328 (4th Cir. 2009) (quoting Gall, 552 U.S. at 51). "A sentence based on an improperly calculated guidelines range will be found unreasonable and vacated." United States v. Abu Ali, 528 F.3d 210, 260 (4th Cir. 2008).

4

We review a district court's interpretation of the Guidelines de novo. United States v. Maroquin-Bran, 587 F.3d 214, 217 (4th Cir. 2009). In interpreting the Guidelines, ordinary rules of statutory construction apply. See United States v. Stokes, 347 F.3d 103, 105 (4th Cir. 2003). Thus, we give a Guideline "its plain meaning, as determined by examination of its 'language, structure, and purpose.'" Id. (quoting United States v. Horton, 321 F.3d 476, 479 (4th Cir. 2003)). We also examine the commentary accompanying a Guideline, which "is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." Stinson v. United States, 508 U.S. 36, 38 (1993).

United States Sentencing Guidelines Manual § 2P1.1 provides the offense level for escape, setting a base offense level of 13. U.S. Sentencing Guidelines Manual § 2P1.1(a)(1). The Guideline provides a four-level reduction, however, "[i]f the defendant escaped from the non-secure custody of a community corrections center, community treatment center, 'halfway house,' or similar facility." Id. § 2P1.1(b)(3). The Guidelines' commentary provides that "'non-secure custody' means custody with no significant physical restraint." Id. § 2P1.1 cmt. n.1. The commentary provides as an example a "defendant walk[ing] away from a work detail outside the security perimeter of an

5

institution," a defendant "escap[ing] from an institution with no physical perimeter barrier," and a defendant who "failed to return to any institution from a pass or unescorted furlough." Id.

On appeal, Padgett argues that by the terms of § 2P1.1(b)(3), he qualifies for the reduction because Bannum Place is a "halfway house." In contrast, the district court found that, because the Marshals were on hand to restrain and transfer Padgett back to a secure facility, the reduction did not apply. In light of the facts and circumstances of this case, we agree with the district court. "Secure custody" includes "custody in which a person is constrained by a secure perimeter, in the custody of an armed guard, or otherwise physically restrained from departing an area." United States v. Pratt, 568 F.3d 11, 22 n.10 (1st Cir. 2009); see also United States v. Piccolo, 441 F.3d 1084, 1089 (9th Cir. 2006) (noting "[w]hile an escapee who flees a secured facility or the custody of an armed guard presents a serious risk of injury to himself and others, the same cannot be said for an escapee who leaves a halfway house with permission and fails to return"). Accordingly, although Bannum Place is a non-secure facility and halfway house, because Padgett was in the care and custody of the Marshals — armed guards — at the time of his escape, the reduction does not apply.

6

Accordingly, we affirm the district court's judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED